**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MANUEL GUERRERO-JASSO,
*Defendant-Appellant*.

No. 12-10372

D.C. No.
5:11-cr-00363-DLJ-1

OPINION

Appeal from the United States District Court
for the Northern District of California
D. Lowell Jensen, Senior District Judge, Presiding

Argued and Submitted
July 8, 2013—San Francisco, California

Filed May 27, 2014

Before: Ferdinand F. Fernandez, Richard A. Paez,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon;
Concurrence by Judge Fernandez;
Concurrence by Judge Berzon

# SUMMARY[*]

## Criminal Law

The panel vacated a sentence and remanded for further proceedings in a case in which the defendant entered a plea of guilty to an information alleging that he reentered the country without authorization after being removed – a violation of 8 U.S.C. § 1326 – and received a 42-month sentence.

The panel held that in applying the twenty-year statutory maximum penalty under 8 U.S.C. § 1326(b) instead of the two-year statutory maximum penalty, the district court impermissibly relied on a fact – that the defendant's removal was subsequent to his aggravated felony conviction – that was neither admitted by the defendant nor found by a jury beyond a reasonable doubt, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

The panel rejected the government's contention that the defendant's admission to the necessary conviction/removal sequence is satisfied by documents and statements that were not dependent on the guilty plea.

The panel wrote that the district court incorrectly interpreted *United States v. Mendoza-Zaragoza*, 567 F.3d 431 (9th Cir. 2009), as holding that a guilty plea to a § 1326 indictment which alleges multiple removal dates establishes as a fact each removal date. Because the defendant did not

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

admit to the only alleged removal date that succeeded the qualifying conviction, the panel held that the sentence of more than two years did not rest on an admission by the defendant, and therefore violated *Apprendi.*

Distinguishing *United States v. Zepeda-Martinez*, 470 F.3d 909 (9th Cir. 2006), the panel concluded that the *Apprendi* error was not harmless.

Judge Fernandez concurred in the majority opinion, with the exception of a paragraph – which he deemed brumal, overbroad, and unnecessary – discussing why an out-of-court confession cannot alone suffice to meet *Apprendi* requirements.

Concurring, Judge Berzon wrote separately to express her concern that, under this court's case law, harmless-error review based on post-conviction factual submissions could swallow up the *Apprendi* rule.

---

**COUNSEL**

Cynthia C. Lie (argued), Assistant Federal Public Defender, Office of the Federal Public Defender, San Jose, California, for Defendant-Appellant.

Anne M. Voigts, (argued) and Barbara Valliere, Assistant United States Attorney, Office of the United States Attorney, San Francisco, California, for Plaintiff-Appellee.

---

**OPINION**

BERZON, Circuit Judge:

Appellant Manuel Guerrero-Jasso's mother brought him to the United States from Mexico when he was eleven years old. At age twenty-six, he was found unlawfully present in California. He entered a plea of guilty to a one-count information alleging that he reentered the country without authorization after being removed — a violation of 8 U.S.C. § 1326 — and received a forty-two-month sentence. He appeals the length of his sentence as exceeding the maximum sentence allowed under the operative statute. We hold that, in applying the twenty-year statutory maximum penalty instead of the two-year statutory maximum penalty, the district court impermissibly relied on facts that were neither admitted by the Defendant nor found by a jury beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000). Accordingly, we vacate the sentence, and remand for further proceedings consistent with this opinion.

**I.**

A person convicted under 8 U.S.C. § 1326 is ordinarily subject to a fine and a maximum term of two years imprisonment. *See United States v. Mendoza-Zaragoza*, 567 F.3d 431, 433 (9th Cir. 2009). "Section 1326(b), however, increases the maximum sentence to twenty years if the alien's removal 'was subsequent to a conviction for commission of an aggravated felony.'" *Id.* (quoting 8 U.S.C. § 1326(b)(2)). As the language of § 1326(b)(2) makes plain, for the penalty enhancement to apply, the removal on which the conviction is predicated must have occurred *after* the

aggravated felony conviction. *See United States v. Covian-Sandoval*, 462 F.3d 1090, 1097 (9th Cir. 2006).

Guerrero-Jasso was charged with one count of being an alien "found in" the United States in violation of 8 U.S.C. § 1326. The government's information alleged that he had been removed from the United States "on or about April 7, 2009, April 16, 2009, and January 19, 2011." Although the information did not so specify, Guerrero-Jasso had been convicted on May 20, 2010 of an aggravated felony, namely, possession of a controlled substance for sale. 8 U.S.C. § 1101(a)(43)(B); *see Rendon v. Mukasey*, 520 F.3d 967, 976 (9th Cir. 2008).

Guerrero-Jasso pled guilty to the § 1326 count without a plea agreement. In an Application for Permission to Enter Plea of Guilty, he admitted that "[o]n or about February 12, 2011, [he] was found in . . . the United States after having previously been removed" and without authorization to re-enter the country. The Application acknowledged that his counsel informed him that the maximum sentence was twenty years. He did not admit the dates of the prior removals.

At the plea colloquy, Guerrero-Jasso affirmed his understanding that he could face up to twenty years in prison. Guerrero-Jasso also affirmed that the Application contained a "true statement of what [he] did." He did not otherwise admit any facts alleged in the information, including any of the prior removal dates. The government then proffered that Guerrero-Jasso had been removed "on or about April 7, 2009, April 16, 2009, and January 19, 2011." Immediately thereafter, the district court turned to Guerrero-Jasso and stated: "Now, this is a case that is proceeding on the basis of an information. That means you didn't go to the grand jury;

do you understand that?"  Guerrero-Jasso responded that he understood.  The district court then accepted Guerrero-Jasso's guilty plea, without asking him to admit to any of the alleged dates of removal.

Prior to sentencing, the probation office prepared a presentence report, "PSR," which listed each of the three alleged removal dates.  The PSR also stated that "[o]n March 28, 2011 . . . Guerrero-Jasso provided a written statement" to an Immigration and Customs Enforcement agent "attesting to his . . . prior deportations."  The PSR recommended that because Guerrero-Jasso had reentered the United States after being removed in January 2011 following his 2010 aggravated felony conviction, the maximum sentence was twenty years.  *See* 8 U.S.C. § 1326(b)(2).

In his sentencing memorandum, Guerrero-Jasso objected to the PSR on the ground that his guilty plea "admitt[ed] only the facts necessary for a bare conviction" under 8 U.S.C. § 1326, not the "sentence-enhancing fact[ ]" that he had been removed after conviction for an aggravated felony.  After the government obtained three continuances of the sentencing hearing, it introduced three execution of warrant forms, indicating that an immigration officer had witnessed Guerrero-Jasso's removal on each of the three dates in question.

At the final sentencing hearing, the district court stated that it was not relying on the warrants of removal (although it rejected the defense's motion to strike those documents). Instead, the court ruled that Guerrero-Jasso could be subject to the enhanced twenty-year maximum sentence because he had sufficiently admitted to all the dates of removal by pleading guilty to the information.  Accordingly, Guerrero-

Jasso was sentenced to forty-two months, considerably more than the twenty-four-month maximum penalty for violations of § 1326 without the enhancement.

## II.A

Guerrero-Jasso's sole contention on appeal is that under *Apprendi*, it was error to apply 8 U.S.C. § 1326(b)'s increased statutory maximum, because his guilty plea to the essential elements of 8 U.S.C. § 1326(a) did not establish that he had been removed after an aggravated felony conviction.

The rule established in *Apprendi* requires that, "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum . . . be submitted to a jury, and proved beyond a reasonable doubt,'" *Mendoza-Zaragoza*, 567 F.3d at 434 (quoting *Apprendi*, 530 U.S. at 490) (first alteration in original), or "admitted by the defendant," *United States v. Zepeda-Martinez*, 470 F.3d 909, 910 (9th Cir. 2006). As applied to § 1326, the *Apprendi* principle requires that to trigger § 1326(b)'s twenty-year-maximum sentence, facts establishing that the removal occurred *after* an aggravated felony conviction must be admitted by the defendant or proved to a jury.

Such facts can be established in one of two ways. First, the defendant can admit to, or the jury could find, the requisite *sequence* — i.e., the "fact that [the defendant] had been removed *after* his conviction." *Mendoza-Zaragoza*, 567 F.3d at 434 (emphasis in original). In that event, the precise date of the post-conviction removal need not be proven or admitted. *Id.* Alternatively, the date of the defendant's post-conviction removal can be admitted by the

defendant or proven to a jury. As the date of a prior conviction need not itself be proven beyond a reasonable doubt, *see United States v. Pacheco-Zepeda*, 234 F.3d 411, 414 (9th Cir. 2000) (explaining that *Apprendi* preserved the rule of *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and "carved out an exception [to the *Apprendi* rule] for 'prior convictions'"), admission or proof of the removal date is sufficient to establish eligibility for the § 1326(b) enhancement. Such admission or proof allows for a constitutionally proper determination of "whether the removal had *followed* the [qualifying] conviction in time." *Mendoza-Zaragoza*, 567 F.3d at 434 (emphasis in original) (quoting *United States v. Salazar-Lopez*, 506 F.3d 748, 751 (9th Cir. 2007)).

In this case, however, Guerrero-Jasso entered a guilty plea to a criminal information that listed three separate removal dates, in the conjunctive. "[W]hen either 'A' or 'B' could support a conviction, a defendant who pleads guilty to a charging document alleging 'A and B' admits only 'A' or 'B.'" *Young v. Holder*, 697 F.3d 976, 988 (9th Cir. 2012) (en banc). We therefore treat Guerrero-Jasso's guilty plea as admitting only that one of the three removal dates is correct, not that all are correct.

As it turns out, just one of the three removal dates, the removal on January 19, 2011, occurred after May 20, 2010, the date of the qualifying conviction. Guerrero-Jasso did not admit that he was removed on the 2011 date; he only admitted that he was removed on one of the three dates alleged, not which one. So the entry of the guilty plea alone could not justify application of the § 1326(b) enhancement. *See id.* at 987–88. And it was the "government['s] . . . burden 'at the plea colloquy to seek an explicit admission of any

unlawful conduct it [sought] to attribute to the defendant,'" *United States v. Hunt*, 656 F.3d 906, 912 (9th Cir. 2011) (quoting *United States v. Thomas*, 355 F.3d 1191, 1199 (9th Cir. 2004)), here, the fact of a removal date subsequent to the qualifying conviction. The government sought no such admission, and Guerrero-Jasso did not make one.

This much the government concedes, acknowledging both that, "to support the application of Section 1326(b)'s penalty provision, Guerrero-Jasso had to admit the January 19, 2011[] removal date," and that "[h]is plea to the conjunctively[] phrased information does not provide a specific admission to that single removal date." The government goes on to base its opposition to Guerrero-Jasso's appeal on three factors not dependent on the guilty plea itself: First, the government maintains that Guerrero-Jasso constructively accepted the facts contained in the PSR; second, the government points to Guerrero-Jasso's post-arrest, written confession; and third, the government relies upon the court's statement during the plea colloquy that Guerrero-Jasso faced a twenty-year maximum sentence. According to the government, these documents and statements have the same legal effect as an express admission during a plea colloquy. We disagree.

First, as to the PSR, Guerrero-Jasso was not presented with the PSR's alleged removal dates until after his conviction, and never specifically acceded to them. "When a conviction is obtained through a guilty plea rather than a jury verdict," it is the government's burden "to seek an explicit admission of any unlawful conduct it seeks to attribute to the defendant" for *Apprendi* purposes. *Hunt*, 656 F.3d at 912 (internal quotation marks and citations omitted). Guerrero-Jasso's non-objection at sentencing to facts recited in the PSR cannot meet this standard.

With regard to the "post-arrest confession" cited by the government, the confession itself is not in the record. The government cites the PSR as support for its interpretation of the confession, but the PSR states only that "Mr. Guerrero-Jasso provided a written statement attesting to his illegal status [and] prior deportations." The PSR's recitation of the confession thus neither specifies the removal dates nor specifies that Guerrero-Jasso admitted any particular removal dates.

At any rate, an out-of-court confession cannot alone suffice to meet the *Apprendi* trial-by-jury and beyond-a-reasonable-doubt requirements with regard to facts essential to establishing the maximum penalty for the crime of conviction. If it could, there would be no need ever to have a trial or an in-court plea and admission in a case in which there was an out-of-court confession — obviously a nonsensical proposition, even where the *admissibility* (as opposed to the content) of the out-of-court confession is not at issue. We treat defendant admissions as analogous to jury findings beyond a reasonable doubt for *Apprendi* purposes only when those admissions are made with knowledge of the penal consequences that attend those admissions. *See United States v. Cazares*, 121 F.3d 1241, 1247 (9th Cir. 1997) (noting that "to attribute to a defendant an admission which was never subject to a plea colloquy under Fed. R. Crim. P. 11 would undermine the rule's prophylactic purposes").

Finally, Guerrero-Jasso's acknowledgment of a twenty-year statutory maximum sentence during the plea colloquy was not an admission of the conviction/removal sequence, nor of the dates of removal. During a plea colloquy, judges are not required "to predict the precise maximum penalty at sentencing. Instead, the court need only tell defendants the

maximum sentence that they could *possibly* face." *Garcia-Aguilar v. U.S. Dist. Court for the S. Dist. of Cal.*, 535 F.3d 1021, 1025 (9th Cir. 2008) (internal citation omitted).

Here, it was entirely proper for the court to ensure Guerrero-Jasso was aware of the twenty-year penalty. At that point in the colloquy, it was not yet clear whether the district court would require Guerrero-Jasso to admit the 2011 removal date as a condition of accepting his plea. So the maximum sentence Guerrero-Jasso could "possibly" face going into the plea colloquy *was* twenty years: His acknowledgment that he was advised of this possibility is not an admission of the facts essential to establish the applicability of the twenty-year maximum sentence.

## B.

As none of the government's current arguments are adequate to sustain the conclusion that Guerrero-Jasso admitted to the necessary sequencing facts, we must assess the district court's quite different rationale for adopting the enhanced twenty-year maximum. In deciding to sentence Guerrero-Jasso in accordance with the twenty-year statutory maximum, the district court read *Mendoza-Zaragoza*, 567 F.3d 431, as holding that a guilty plea to a § 1326 indictment which alleges multiple removal dates establishes as a fact each removal date. That interpretation of *Mendoza-Zaragoza* is not correct.

Mendoza-Zaragoza was charged with removal dates, but not with a prior conviction. He sought to enter a guilty plea that did not "admit any facts that would subject him to § 1326(b)'s sentence enhancement." *Id.* at 433. The district court "refused to accept" such a plea, and, as a condition of

accepting the plea, required the defendant to "admit[] his removal dates." *Id.* On appeal, we held that the district court did not abuse its discretion in conditioning acceptance of the plea on the detailed admission, because the indictment "alleged facts (his removal dates) sufficient to support the sentence enhancement under § 1326(b)." *Id.* at 437.

More specifically, *Mendoza-Zaragoza* held, first, "that an indictment will support the § 1326(b) sentence enhancement if it alleges a removal date." *Id.* at 434. That is true as far as the sufficiency of the indictment is concerned. Although *Apprendi* requires that "any fact . . . that increases the maximum penalty for a crime must be charged in an indictment," 530 U.S. at 476 (internal quotation marks omitted), *Almendarez-Torres* excepts prior convictions from all of *Apprendi*'s requirements, including the requirement that facts essential to establishing penalty exposure be alleged in the indictment, *Almendarez-Torres*, 523 U.S. at 226–27. Thus, for purposes of a § 1326(b) enhancement, no allegation in the indictment of the date of the pre-removal conviction is necessary: "[A]n indictment will support a 20-year maximum sentence under § 1326(b) if it alleges a removal date, thus enabling a sentencing court to determine whether the conviction predated the defendant's removal to establish the necessary sequence." *Mendoza-Zaragoza*, 567 F.3d at 436.

In addition to an indictment alleging facts essential to establish the maximum sentence, *Apprendi* mandates proof to a jury of those essential facts beyond a reasonable doubt, or a clear admission to the pertinent fact, adequate to waive the constitutional proof requirement. As to this aspect of *Apprendi*, *Mendoza-Zaragoza* held only that a district court has the discretion to *require* a defendant to admit a specific removal date before accepting a guilty plea to a § 1326

charge, thereby satisfying the *Apprendi* proof requirements. *Id.* at 437.

The district court in this case accepted Guerrero-Jasso's plea without requiring him to admit to the removal date essential to the enhanced sentence. As Guerrero-Jasso did not admit to the 2011 removal date, the district court's sentence of more than two years, unlike the sentence in *Mendoza-Zaragoza*, did not rest on an admission by the defendant, and so violated *Apprendi*.

## III.

Not all violations of *Apprendi* warrant reversal. A properly preserved *Apprendi* error is reviewed for harmless error, *see Washington v. Recuenco*, 548 U.S. 212, 222 (2006), under the standard articulated in *Neder v. United States*, 527 U.S. 1 (1999). *See Zepeda-Martinez*, 470 F.3d at 913.

Guerrero-Jasso preserved his *Apprendi* claim by expressly stating at sentencing that he had never admitted the January 2011 removal date and arguing that his sentence thus could not exceed two years. The *Apprendi* error was, of course, a constitutional one. We must therefore reverse unless we "find[] beyond a reasonable doubt that the result 'would have been the same absent the error.'" *Zepeda-Martinez*, 470 F.3d at 913 (quoting *Neder*, 527 U.S. at 19); *see Chapman v. California*, 386 U.S. 18 (1967). "[W]here the record contains 'overwhelming' and 'uncontroverted' evidence supporting an element of the crime, the error is [constitutionally] harmless." *Zepeda-Martinez*, 470 F.3d at 913 (quoting *Neder*, 527 U.S. at 17, 18).

The government asks us to approve Guerrero-Jasso's sentence on the basis of (1) a warrant of removal it introduced post-conviction and (2) Guerrero-Jasso's alleged acceptance of the PSR. The government maintains that this post-conviction evidence proves any constitutional error harmless beyond a reasonable doubt, arguing that the circumstances of this case are indistinguishable from the facts of *Zepeda-Martinez*.

In *Zepeda-Martinez*, a warrant of removal showed "Zepeda was ordered removed on June 8, 2004 and was physically removed . . . on foot on June 17, 2004." *Id.* The warrant included "Zepeda's name, signature, fingerprint, and immigration case number, as well as the name, title, and signature of an immigration officer who witnessed the removal." *Id.* Noting that "Zepeda did not dispute the authenticity of this document," and that "Zepeda himself had offered the first page of the same warrant as an exhibit" pre-trial, the court concluded that the warrant was "sufficient alone to support a finding of removal beyond a reasonable doubt." *Id.* As a result, the evidence of the essential removal date was "overwhelming" as well as "uncontroverted," thereby satisfying the constitutional harmless error standard. *Id.*

The record before this court includes a somewhat similar document. But unlike the document in *Zepeda-Martinez*, the first page of which was filed pre-trial by the defendant himself, Guerrero-Jasso has never vouched for the accuracy and reliability of this document. Indeed, unlike Zepeda-Martinez, who "did not contest . . . the authenticity of the warrant of removal," *Hunt*, 656 F.3d at 914, Guerrero-Jasso made a timely objection that the removal warrant should not be admitted, arguing that it was aimed solely at the appellate

court's harmless-error determination, was "inadequately authenticated," "insufficient," and included only the execution-of-warrant documentation, "not the warrant itself." The district court never resolved these objections, because it found — erroneously, as we have explained — that Guerrero-Jasso had adequately admitted to the pertinent removal date.

We thus disagree that the facts before us are indistinguishable from those in *Zepeda-Martinez*, and cannot conclude beyond a reasonable doubt, on the record before us, that the *Apprendi* error in Guerrero-Jasso's case was harmless.

By objecting to the execution-of-warrant form as inauthentic and incomplete, Guerrero-Jasso challenged the government's belated evidentiary basis for proving his removal date. The government's evidence cannot, therefore, be described as "uncontroverted." *See* Black's Law Dictionary (9th ed. 2009) (defining "controvert" as "[t]o dispute or contest; esp. to deny (as an allegation in a pleading) or oppose in argument"). And we cannot say beyond a reasonable doubt that a jury would necessarily have relied on this evidence, even if it were admitted as prima facie authentic.

In *Hunt*, we refused to declare an *Apprendi* error harmless, in part because, as the essential, omitted fact was "never litigated," the "plea and sentencing proceedings . . . provide[d] an inadequate record" for our harmless-error review. 656 F.3d at 915. In so concluding, we noted that:

> If Hunt's case had proceeded to trial, he could have raised Sixth Amendment or evidentiary objections, he could have

>   presented expert testimony to counter the opinions of Detective Feliciano, he could have cross-examined the various civilian and government witnesses called by the government, and he could have decided to testify to tell his side of the story.

*Id.* at 916.  Here, had Guerrero-Jasso had the opportunity to challenge the authenticity of the warrant at trial, he could have pointed out the absence of live testimony from the immigration officer who signed the execution of warrant, as well as the absence of any testimony as to the form's chain of custody. *Cf. United States v. Estrada-Eliverio*, 583 F.3d 669, 671–73 (9th Cir. 2009) (holding that the government made a prima facie showing of authenticity of a warrant of removal where the immigration agent who maintained the defendant's immigration file testified at trial as to his record-keeping practices and that the warrant admitted was a true and correct copy of the warrant in the defendant's file).  On those bases, Guerrero-Jasso could have argued that there was not proof beyond a reasonable doubt that the document was what it purported to be.

The government contends that Guerrero-Jasso's objections did not sufficiently controvert the government's evidence, because he did not meaningfully place the accuracy of the document into dispute and failed to "raise[] evidence sufficient to support a contrary finding." *Neder*, 527 U.S. at 19.

We disagree that Guerrero-Jasso's challenge to the authenticity of the government's evidence was not "meaningful."  By challenging the document as unauthenticated, he disputed the government's assertion that

the document was what the government said it was. This challenge is a meaningful one, as it goes to the likelihood that a jury would find the necessary removal date beyond a reasonable doubt. *Cf. Zepeda-Martinez*, 470 F.3d at 913. In similar circumstances, *Hunt* refused to characterize the government's evidence of a post-arrest confession as "overwhelming" evidence of an essential, omitted fact, where the defendant "presented non-frivolous arguments contesting the reliability of the statement." 656 F.3d at 915.

More fundamentally, we reject the government's suggestion that a defendant in Guerrero-Jasso's position has an affirmative obligation to introduce evidence post hoc to defeat the government's harmlessness argument. The government cites the statement in *Zepeda-Martinez* that a constitutional "error is not harmless if 'the defendant contested the omitted element and raised evidence sufficient to support a contrary finding,'" 470 F.3d at 913 (quoting *Neder*, 527 U.S. at 19), as support for such a requirement. But when placed in its proper context, this statement does not obligate a defendant to introduce evidence during sentencing to establish that the government's error was harmless. *Zepeda-Martinez* was quoting *Neder*, in which the Court explained that, to "safeguard[] the jury guarantee," courts will often need to "conduct a thorough examination of the record" before concluding that a constitutional error was harmless. 527 U.S. at 19. *Neder* went on to explain: "If . . . the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error — *for example*, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding — it should not find the error harmless." *Id.* (emphasis added).

The example provided in *Neder* is not the *only* way a constitutional error can be ruled not harmless; it is *one* way. Where, as here, there was no trial but a guilty plea, and the evidence is introduced post-conviction by the government only to demonstrate harmlessness, it would fundamentally undermine the *Apprendi* protections to *require* the defendant affirmatively to present evidence to counter facts that were never properly established in accord with *Apprendi* in the first place.

Finally, the government asserts that any constitutional error was harmless because Guerrero-Jasso "accepted" the prior removal dates as expressed in the PSR. But in his sentencing memorandum, Guerrero-Jasso continued to assert that his plea "admitted only the facts necessary for a bare conviction," not the "sentence-enhancing fact" of a specific removal date, and he objected to the PSR's sentencing calculations, insisting that the two-year statutory maximum cabined his sentence. At sentencing, Guerrero-Jasso continued to object to the enhancement and did not specifically accede to the PSR's recitation of the dates of removal. In light of Guerrero-Jasso's challenges to the removal warrant and his continued protestations at sentencing, the lack of an express objection to the removal dates recited in the PSR does not alone satisfy the "overwhelming and uncontroverted" evidentiary standard in this case.

For these reasons, the sentence must be vacated, and the case remanded. On remand, the district court must sentence Guerrero-Jasso in accordance with the statutory maximum

penalty applicable to the offense he admitted when he entered his guilty plea. *See Hunt*, 656 F.3d at 917.

## VACATED and REMANDED.

---

FERNANDEZ, Circuit Judge, concurring:

I concur in the majority opinion, with the exception of the paragraph that commences at line 10 on page 10, which I believe is brumal, overbroad, and unnecessary to our decision. On the record in this case, the result we reach is compelled without that embellishment.

---

BERZON, Circuit Judge, concurring:

I write separately to express my concern that, under our case law, harmless-error review based on post-conviction factual submissions could swallow up the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We need to re-think our doctrine on this important point.

## I.

First, some context:

After Guerrero-Jasso filed a sentencing memorandum objecting to the Pre-Sentence Report's conclusion that he was subject to a mandatory twenty-year statutory maximum sentence, the government asked for more time to check Guerrero-Jasso's assertion that he had not, in fact, admitted

each date of removal alleged in the conjunctively phrased information. Guerrero-Jasso agreed to continue sentencing to give the government the time it sought. After receiving the transcript of the change of plea proceeding (which confirmed that Guerrero-Jasso did not admit to each date of removal) the government "request[ed] additional time to compare [the] transcripts with case law." The district court granted the government's request. The day before the continued sentencing hearing, the government filed a "Supplemental Exhibit" in support of its sentencing memorandum. The exhibit comprises three one-page documents, each entitled "Warrant of Removal/Deportation" and each purporting to show that Guerrero-Jasso was removed to Mexico on the date indicated.

At sentencing, Guerrero-Jasso renewed his position that he was not subject to the twenty-year maximum penalty because he had not admitted the requisite removal date. The government argued, and the court responded, as follows:

> THE GOVERNMENT: [T]here's enough in the record for the Court to find that the date was proven. The Supreme Court says that any *Apprendi* error is reviewed for harmlessness.
>
> THE COURT: That's when the Circuit gets their hands on it — I mean after I'm through. I mean, if you tell me that if I commit an error, "It's okay. Don't worry about it because the Ninth Circuit is not going to pay any attention to it." To me that doesn't impress me in terms of whether I should commit an error or not. So I don't think I should be committing any errors even if I

know that if I commit an error, the Ninth Circuit isn't going to care.

THE GOVERNMENT: The cases that say *Apprendi* error is reviewed for harmlessness don't draw a distinction between whether the district court judge is aware of this error or not.    What they ask the district court to consider is whether there is overwhelming and uncontroverted evidence of, in this case, the fact of the prior deport.

And the Government submitted exhibits to this Court that prove the prior deport, the warrants of deport.  The Government notes that the PSR — the Court is allowed to look at the failure to object to [the date of] deport in the PSR . . . .

And maybe most tellingly, the defendant is never telling this Court he wasn't deported on those dates.  There's no chance that the result in this Court would be different.  And that's what *Apprendi* error asks this Court and asks the Ninth Circuit to look at: Would the result be different if the error this Court is worried about committing didn't occur?  In this case the result wouldn't be different.[1]

---

[1] The government also pointed to Guerrero-Jasso's failure to object to the court's representation that he was subject to the twenty-year maximum penalty as an admission of post-conviction removal.  For the reasons expressed in the majority opinion, Guerrero-Jasso's preliminary

Combined with the timing of the government's evidentiary submission, this exchange makes it obvious that the sole point of introducing the warrants of removal was to "prove" the essential removal date, thereby justifying a twenty-year statutory ceiling.

Even though the district court's sentence violated *Apprendi*, the government asks us to uphold the sentence on the basis of the "warrant of removal/deportation" purporting to show that Guerrero-Jasso was removed to Mexico on January 19, 2011. As our opinion in this case indicates, there is support in this court's case law for permitting such post-conviction governmental submissions as proof of *Apprendi* harmlessness — although, as the result reached in this case demonstrates, such after-the-fact submissions can establish *Apprendi* harmlessness only in limited circumstances.

One would think that a constitutional protection designed to assure that juries rather than judges decide facts essential to determining the potential maximum sentence could never be satisfied by post-conviction evidentiary submissions, reviewed by a judge and directed at demonstrating that *had* the submissions been introduced at a jury trial, a jury would have found the facts in the government's favor beyond a reasonable doubt. Such an approach is entirely different from the usual harmless-error analysis, which reviews the record of an actual trial to determine what the actual jury in that case would have decided *on the record before it*. *See, e.g.*, *Chapman v. California*, 386 U.S. 18, 25–26 (1967). It is, after all, out of respect for "the jury-trial guarantee," that the Supreme Court "instructs . . . reviewing court[s] to consider

---

acceptance of the court's maximum-sentence representation was insufficient for that purpose.

. . . not what effect [a] constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand." *Sullivan v. Louisiana*, 113 S. Ct. 2078, 2081 (1993).

This case, of course, involved a guilty plea, so there was no jury trial. But that circumstance makes the post-conviction submission of evidence in an effort to demonstrate harmless error even more questionable: The defendant waived a jury trial, so there is no pre-conviction factual record at all. To create one after the fact is not only to undermine *Apprendi* but to broaden the defendant's waiver, by allowing courts to make factual determinations concerning a trial that never occurred.

Here, for example, the government neglected to elicit necessary admissions at the plea hearing. How can we, or the district court, know that it would have done better had a trial occurred — that is, that it would properly have submitted the necessary removal documents? And why is Guerrero-Jasso's waiver of jury trial to be taken as waiving a jury trial as to *that* question, which did not arise until after the waiver?

This state of affairs leads me to wonder: How did we get here? And can, and should, we reconsider?

## II.

A review of our case law shows that we have not always treated *Apprendi*'s protections so carelessly:

- *United States v. Tighe*, 266 F.3d 1187, 1195 (9th Cir. 2001), held that if the fact of a juvenile adjudication is used to increase the maximum statutory penalty,

that fact must be charged in an indictment and found by a jury beyond a reasonable doubt. "Because Tighe properly preserved his . . . *Apprendi* claim for appeal, his sentence [could not] stand unless the district court's constitutional error was harmless beyond a reasonable doubt." *Id.* We then held, without further inquiry, that the error in that case was not harmless, simply because the defendant's sentence exceeded "the applicable statutory maximum." *Id.* Like Guerrero-Jasso, Tighe's conviction was the result of a guilty plea. *Id.* at 1190.

• *United States v. Velasco-Heredia*, 319 F.3d 1080, 1085–86 (9th Cir. 2003), considered whether an *Apprendi* error resulting from judicial fact-finding as to drug quantity was harmless. The drug quantity found at sentencing increased what was otherwise a thirty-seven-to-forty-six month guidelines range and a statutory maximum of five years, to a mandatory five-year sentence and a maximum forty-year sentence. *Id.* at 1083–84, 1086. We reasoned that therefore "not only was the error not harmless, it was demonstrably harmful." *Id.* at 1086. We found it "too clever by half to permit the government in the guilt phase of a case to prove beyond a reasonable doubt that only one kilogram of marijuana was involved in the offense, and then at sentencing to prove 101 kilograms by a preponderance of the evidence and claim that such a finding . . . requires the maximum sentence of five years." *Id.* Rather, in our view, the increased penalty provision could not apply "unless and until 100 kilograms or more of marijuana are properly on the sentencing table," which, "[a]fter *Apprendi*, . . . cannot happen until the

jury, or the court in a bench trial, finds beyond a reasonable doubt that this is the quantity involved in the violation." *Id.* Recognizing that "the Fifth Amendment to our Constitution does not permit Velasco-Heradia to be tried twice for the same offense[,]" we vacated his sentence and remanded for resentencing in accordance with an unspecified drug quantity. *Id.* at 1086–87.

- *United States v. Banuelos*, 322 F.3d 700, 705 (9th Cir. 2003), held that the district court erred by making a finding, by a standard *lower* than beyond a reasonable doubt, as to the amount of drugs for which a defendant involved in a drug conspiracy was personally responsible, where the finding increased the defendant's maximum sentence exposure. The defendant in that case had entered a guilty plea to a drug conspiracy charge, but he never waived his right to have a jury determine the drug quantity attributable to him, and he refused to waive the beyond-a-reasonable-doubt standard as to drug quantity. *Id.* at 703. We held that, "because Baneuelos did not allocute to drug quantity at the change of plea hearing or admit to drug quantity in a written plea agreement," he was properly convicted of only the "general offense . . . charged in the indictment . . . the only offense for which there was a factual basis for conviction." *Id.* at 706–07. Because he challenged his sentence but not his conviction, we explained that the proper course on remand was for the district court to resentence him "subject to the maximum sentence supported by the facts found by the [fact-finder] beyond a reasonable doubt," — the facts necessarily included in his plea to the *general* drug-conspiracy

offense. *Id.* at 706 (internal quotation marks omitted; alteration in original). And, although Banuelos did not raise the issue on appeal, we noted that "[t]he court's finding of drug quantity attributable to Banuelos by any standard, without first advising Banuelos that he had a right to jury determination of that fact beyond a reasonable doubt, also violated *Apprendi*." *Id.* at 705 n.3.

Finally, we rejected the suggestion that the court should scour the record at sentencing to determine if the error was harmless beyond a reasonable doubt. *Id.* at 706 & n.4. As "the very finding of an *Apprendi* violation means that it was improper for the district court to determine drug quantity attributable to Banuelos at sentencing without first informing Banuelos of his right to a jury determination of drug quantity to him beyond a reasonable doubt[,]" we deemed ourselves "prohibit[ed] . . . from considering admissions made at sentencing in evaluating an *Apprendi* violation for harmless error." *Id.* at 706 n.4.

- *United States v. Thomas*, 355 F.3d 1191 (9th Cir. 2004), followed *Banuelos* and *Velasco-Heradia*. In that case, the defendant pled guilty to a drug offense, but refused to accept responsibility for any specific drug quantity during the plea colloquy. *Id.* at 1192–93. Nevertheless, the judge sentenced him in accordance with a statutory maximum correlating to a specified drug quantity. *Id.* at 1194. Because the error increased the defendant's guidelines offense level and required a mandatory minimum sentence, we deemed the error "clearly harmful." *Id.* at 1201. We rejected the government's argument that, on

remand, the judge could impose a sentence in accordance with the elevated statutory maximum penalty if the judge found the drug quantity beyond a reasonable doubt: As the defendant "did not . . . admit to possessing any specific quantity, nor . . . knowingly waive his right under *Apprendi* . . . to have a jury determine quantity beyond a reasonable doubt," we held, "the district judge cannot determine any particular drug quantity that would affect the maximum statutory sentence to which [the defendant] is exposed." *Id.* at 1202.

• *United States v. Patterson*, 381 F.3d 859 (9th Cir. 2004), considered the effect of a guilty plea to manufacturing an unspecified amount of marijuana on the defendant's sentence. The defendant entered, and the district court accepted, a guilty plea that did not admit to a specified amount of marijuana, with the understanding that the judge would determine the amount of marijuana at the time of sentencing. *Id.* at 861–62. After the defendant entered his plea, but before sentencing, *Apprendi* issued, holding such judicial determinations unconstitutional, and the district court, on the government's motion, vacated the defendant's plea. *Id.* at 862. The defendant was then tried and convicted by a jury, and the jury made a finding as to the specific drug quantity. *Id.* This court reversed, reasoning that jeopardy attached the moment the defendant entered and the court accepted the guilty plea; that the court was not free to vacate the plea on the government's motion; and that the trial therefore violated double jeopardy principles. *Id.* at 864–65. Although it would have been a simple matter to review the trial record to determine whether there

was evidence to support a finding that the *Apprendi* violation was harmless beyond a reasonable doubt, we instead remanded with instructions to resentence the defendant in accordance with the maximum penalty allowable under the plea that he entered. *Id.* at 866.

•   Finally, *United States v. Lococo*, 514 F.3d 860, 865 (9th Cir. 2007), held that a district court violated *Apprendi* by sentencing a defendant according to the statutory maximum penalty for knowing involvement in a conspiracy to distribute crack cocaine, because the defendant admitted only to knowing involvement in the conspiracy's distribution of *powder* cocaine when he entered his guilty plea.  In remanding for resentencing, we cited our prior decision in *Banuelos*, and instructed the district court that it could only base the defendant's sentence on the amount of powder cocaine involved in the conspiracy, "because it is only powder cocaine that Lococo admits he knew about." *Id.* at 866.

Our interpretations of the *Apprendi* harmless-error review standard in these cases do not correspond with the "overwhelming and uncontroverted" standard described in *Neder v. United States*, 527 U.S. 1, 9 (1999), outside the *Apprendi* context, and adopted in *United States v. Zepeda-Martinez*, 470 F.3d 909, 913 (9th Cir. 2006), and *United States v. Hunt*, 656 F.3d 906, 913 (9th Cir. 2011), as applicable in *Apprendi* cases.  The difference, in my view, rests largely on a critical distinction between post-conviction, harmless-error review of a preserved *Apprendi* claim and plain-error review of an unpreserved claim. *See United States v. Minore*, 292 F.3d 1109, 1122 n.12 (9th Cir. 2002).

*United States v. Minore* considered two potential methods, first outlined by *United States v. Nordby*, 225 F.3d 1053, 1060 (9th Cir. 2000), *overruled in part by United States v. Buckland*, 289 F.3d 558, 567–68 (9th Cir. 2002) (en banc), for reviewing an *unpreserved Apprendi* violation for plain error. 292 F.3d at 1121–22. We termed the two *Nordby* methods the "less stringent" approach and the "more stringent" approach. *Id.* The more stringent approach followed *Neder*, asking "whether it was clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Id.* at 1122 (internal quotation marks omitted). We held the more stringent approach properly applicable to plain-error cases, where it is the defendant's burden to prove the error "affected his substantial rights."[2] *Id.* at 1123; *accord United States v. Covian-Sandoval*, 462 F.3d 1090, 1098 (9th Cir. 2006); *Buckland*, 289 F.3d at 569–70 (9th Cir. 2002) (concluding that defendant's substantial rights were not affected by *Apprendi* error in light of the unchallenged amount of narcotics attributed to him and therefore refusing to reverse under plain error review).

---

[2] Similarly, *United States v. Cotton* held that failure to charge drug quantity in an indictment was error, but that where the evidence of drug quantity was "overwhelming and essentially uncontroverted," the error did not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." 535 U.S. 625, 632–33 (2002) (internal quotation marks omitted). Perceiving that "[t]he real threat . . . to the fairness, integrity, and public reputation of judicial proceedings would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial[,]" the Court determined reversal for plain error improper. *Id.* at 634 (internal quotation marks omitted).

*Minore* described the less stringent approach as simply asking whether the defendant received a sentence greater than authorized, absent the error. *See* 292 F.3d at 1121–22. And although we held the less stringent standard not applicable to plain-error cases, we recognized that we had previously applied it in harmless-error cases, and were careful "not [to] suggest that the less stringent approach is no longer available on harmless error review." *Id.* at 1122 n.12. We then continued to review properly preserved *Apprendi* claims for harmless error by analyzing only the error's effect on the sentence received, not combing the record for overwhelming, uncontroverted evidence of the sentencing-enhancing fact. *See, e.g.*, *Thomas*, 355 F.3d at 1201.

*Zepeda-Martinez*, however, apparently deeming this long line of cases incompatible with *Washington v. Recuenco*, 548 U.S. 212 (2006), held that *Neder*'s brand of harmless-error review applies to "properly preserved" *Apprendi* violations, too. 470 F.3d at 913. Accepting that "our prior case law may suggest otherwise," *Zepeda-Martinez* cites *Recuenco* as holding that "*Apprendi* errors are reviewed under the harmless error standard as applied in *Neder*[.]" *Id.*

In my view, *Recuenco* did not so hold, and *Zepeda-Martinez* erred in assuming that it did. *Recuenco* affirmed a rule that already existed in our circuit, i.e., that *Apprendi* violations are reviewable for harmless error. But it did not mandate any particular *method* for conducting that review, and so did not require us to overrule our circuit precedents regarding the nature of that review where there is preserved *Apprendi* error.

In *Recuenco*, the jury returned a guilty verdict for assault and a special verdict finding that the defendant was armed

with a deadly weapon. The jury was not asked to find, and did not find, that the defendant was armed with a firearm. 548 U.S. at 215. Nonetheless, at sentencing, the defendant received a three-year enhancement for being armed with a firearm. *Id.*

The Court held *Neder*'s harmless-error ruling applicable under these circumstances, reasoning that, "[b]ecause Neder's jury did not find him guilty of each of the elements of the offenses with which he was charged, its verdict is no more fairly described as a complete finding of guilt of the crimes for which the defendant was sentenced than is the verdict here." *Id.* at 221. As the case was in this respect "indistinguishable from *Neder*," *id.* at 220, the Court held the *Apprendi* error in *Recuenco* reviewable for harmless error. The Court did not, however, explain *how* harmless-error review of *Apprendi* errors should be conducted. *Neder*'s mode of harmless-error analysis is not discussed in *Recuenco*, and *Recuenco* specifically declined to rule on the question of whether the error in the case before it was harmless.[3] *Id.* at

---

[3] The defendant-respondent in *Recuenco* had argued that at the time of his conviction, Washington state law did not provide a procedure whereby a jury could make the finding required by *Apprendi*. *Id.* at 217. He went on to maintain that the Washington Supreme Court's structural error holding regarding the *Apprendi* violation in his case thus rested on an adequate and independent state ground — the lack of a procedural mechanism allowing a jury to make the necessary factual finding. *Id.* at 216–17. *Recuenco* rejected the argument that state law barred it from reaching the merits, but explained that the state's mechanisms for presenting sentence enhancements to a jury were relevant to harmlessness. If the state had no such mechanism, *Recuenco* reasoned, "that . . . suggests that respondent will be able to demonstrate that the . . . violation *in this particular case* was not harmless." *Id.* at 218 (emphasis in original) (citing *Chapman*, 386 U.S. at 24). *Recuenco* thus suggests that a sentence above the statutory maximum could not be deemed harmless if the penalty

217–18. *Recuenco* held only that "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." 548 U.S. at 222.

Our rejection of our prior case law following *Recuenco* might not be so troubling if our mode of harmless-error review had been limited to reviewing the *trial* record with regard to what the jury would almost surely have found on the factual question essential to determining the maximum sentence. But we held in *Nordby* that review of an *Apprendi* violation should "encompass[ ] the 'whole record,'" including evidence from sentencing proceedings. 225 F.3d at 1061 n.6 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)). We derived the notion of "whole record" review from the Supreme Court's opinion in *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986), which held that a violation of the constitutional right to confront an adversarial witness does not require reversal if the error was harmless beyond a reasonable doubt.

*Van Arsdall*, however, made no mention of sentencing proceedings. Instead, it concluded that "the Supreme Court of Delaware was wrong when it declined to consider whether [the adverse] ruling was harmless in the context of the *trial* as a whole." 475 U.S. at 674 (emphasis added). And none of the cases *Van Arsdall* cites as support for "whole record" review mention sentencing proceedings after a trial *or* a guilty plea either. *See United States v. Hasting*, 461 U.S. 499, 509 (1983) ("[T]he Court has consistently made clear that it is the duty of a reviewing court to consider the *trial* record as a whole and to ignore errors that are harmless."

provision that increased the maximum sentence was not, and could not have been, submitted to a jury.

(emphasis added)); *Moore v. Illinois*, 434 U.S. 220, 232 (1977); *Harrington v. California*, 395 U.S. 250, 253–54 (1969).

Nonetheless, our decision to consider sentencing proceedings in *Nordby* made a certain amount of sense, as we did so for the purpose of giving the defendant an opportunity to counter evidence that the government introduced *at trial* — evidence which the defendant might have failed to dispute because he was unaware of its relevance to the jury's decision until it was declared relevant on appeal. We therefore looked to the sentencing proceedings for a limited purpose — "to assist us in determining what evidence *Nordby* would have introduced at trial [on the omitted fact] had that issue been relevant." *Nordby*, 225 F.3d at 1061 n.6 (emphasis added). But we refused to consider any post-conviction admissions or stipulations made by the defendant, because we deemed "new admissions by Nordby at sentencing, made after the jury had already rendered its verdict . . . irrelevant to [the] inquiry." *Id.*

Unfortunately, we later threw *Nordby*'s limitations to the wind. All that is left of *Nordby*'s careful excision of the relevant post-conviction material from the irrelevant is the rule that we do not consider the defendant's post-conviction admissions or stipulations in *Apprendi* harmless-error review.[4] *See Butler v. Curry*, 528 F.3d 624, 648 n.16 (9th Cir. 2008) (noting "our long-standing rule that admissions at sentencing are not relevant to an *Apprendi* harmless error analysis"); *Lococo*, 514 F.3d at 864 (refusing to consider defendant's statements at sentencing, even though they could

---

[4] Even this rule has on occasion been breached. *See Zepeda-Martinez*, 470 F.3d at 913.

be interpreted as an admission, in assessing the harmlessness of an *Apprendi* error in accepting a guilty plea); *United States v. Salazar-Lopez*, 506 F.3d 748, 755 (9th Cir. 2007) ("[W]e do not consider new admissions made at sentencing in our harmless error inquiry"); *United States v. Jordan*, 291 F.3d 1091, 1097 (9th Cir. 2002) ("A stipulation at sentencing does not address the jury's finding and cannot be considered under *Apprendi*.").

Thus, several opinions of this court since *Nordby* have considered evidence introduced at sentencing by the government as part of harmless-error, rather than — as in *Nordby* — plain-error review, *see, e.g.*, *Hunt*, 656 F.3d at 913–16; *Zepeda-Martinez*, 470 F.3d at 913, and other circuits have done likewise, *see, e.g.*, *United States v. Harakaly*, 734 F.3d 88, 96–97 & n.9 (1st Cir. 2013) (declining to decide whether post-conviction concessions "would independently suffice to establish harmlessness," but relying on them for corroboration of the defendant's "earlier concessions at his Rule 11 hearing"); *United States v. Williams*, 493 F.3d 763, 767–68 (7th Cir. 2007). Moreover — again, unlike in *Nordby* — we have applied this process of post-conviction evidentiary submission and fact-finding analysis to cases in which *there was never a trial at all*, even though *Neder*, *Recuenco*, and *Nordby* all involved jury verdicts. *See Hunt*, 656 F.3d at 913–16 (guilty plea); *Zepeda-Martinez*, 470 F.3d at 913 (same). In the process, we expanded the scope of post-conviction evidence considered as to *Apprendi* harmlessness from evidence the *defendant* would have admitted at trial to evidence the *parties* would have admitted at trial, *Zepeda-Martinez*, 470 F.3d at 913 n.3. The result was to pave the way for a post-conviction bench trial on a fact never conceded before conviction, even where no pre-conviction trial was ever held.

That is precisely what the government proposed here —
a bench trial as a substitute for the trial by jury required by
*Apprendi*, in which evidence never submitted to any jury is
presented for the first and only time to a judge.  To sanction
such a procedure is to allow the protections accorded by
*Apprendi* entirely to atrophy.

Were we to countenance governmental introduction of
evidence for the sole, explicit purpose of defeating harmless-
error review, we would be approving a court doing "just what
[the Supreme Court] ha[s] said it cannot: relying on its own
finding about a non-elemental fact to increase a defendant's
maximum sentence." *Descamps v. United States*, 133 S. Ct.
2276, 2288–89 (2013); *see also Shepard v. United States*,
544 U.S. 13, 25 (2005) (plurality opinion); *id.* at 28 (Thomas,
J., concurring in part and concurring in judgment). *Descamps*
applied this prohibition broadly, resoundingly rejecting our
circuit's prior approach, which had authorized "the court to
try to discern what a trial showed, or a plea proceeding
revealed, about the defendant's underlying conduct," and
emphasizing that "[t]he Sixth Amendment contemplates that
a jury — not a sentencing court — will find such facts,
unanimously and beyond a reasonable doubt."  133 S. Ct. at
2288.

*Zepeda-Martinez* purportedly used post-conviction
evidence as a mere "guide" to determining what would have
ensued in a jury trial and then predicting whether a reasonable
jury necessarily would have found the facts essential to the
crime charged beyond a reasonable doubt.  But this mode of
analysis is judicial fact-finding of precisely the sort
*Descamps* proscribes: It requires going behind the fact of
conviction to establish what evidence the parties would have
introduced at a trial, and then relies on evaluation of that

evidence to impose a sentence greater than the maximum sentence that Congress intended. Moreover, as in *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 918 (9th Cir. 2011) (en banc), *abrogated by Descamps*, 133 S. Ct. at 2282–83, in cases like *Zepeda-Martinez* and *Hunt*, and this case, no trial occurred, so guesses about what would have occurred at trial are entirely hypothetical.

## III.

The government's proposal that we affirm the instant sentence on harmless-error review would require us to hold that because the government produced an execution-of-warrant form at sentencing, Guerrero-Jasso's constitutional right, absent waiver, to have the essential fact of his removal date put to a jury and proved beyond a reasonable doubt can go by the wayside. Quite aside from the reasons we give in the panel opinion for rejecting this proposition, it is one that, in my view, should not be entertained at all. Neither *Neder* nor *Recuenco* support such a result. And, by affording penalty provisions that increase a maximum statutory sentence the protections of the Sixth Amendment and reasonable-doubt standard, the Supreme Court has forbid it. *See Apprendi*, 530 U.S. at 477. Instead, harmless-error review in *Apprendi* cases must respect the principle that a court may not itself make a finding as to a disputed fact — as opposed to an assessment of harmless error on a pre-conviction trial record — in situations where fact-finding would increase the statutory maximum. If the defendant did not admit an essential fact during his plea colloquy and evidence concerning the fact was not put to a jury, it violates *Apprendi* for a court to allow the government, post-conviction, to introduce new evidence, find that evidence of the fact would have been introduced in a hypothetical jury

trial, and then determine that the essential fact would have been found by the hypothetical jury had the newly produced evidence been before it.

With our expansive approach to harmless error in *Apprendi* cases, especially in guilty plea cases, *Apprendi*'s protections could become protections in name only. Indeed, although I have no reason to think that the *Apprendi* error in this case was engineered by the government, our current *Apprendi* harmless-error methodology could encourage prosecutors to do exactly that — consciously allow *Apprendi* error, and then introduce the omitted evidence for the first time at sentencing, thereby bypassing the jury trial protection underlying *Apprendi*. We should stop this process in its tracks by reconsidering en banc our *Apprendi* harmless-error cases, particularly *Zepeda-Martinez*.