Opinion by Judge PAEZ; Dissent by Judge O’SCANNLAIN.
OPINION
PAEZ, Circuit Judge:
The district court sentenced Appellant Stacy Hunt to 180 months in prison after he pled guilty to attempting to possess a controlled substance with the intent to distribute in violation of 21 U.S.C. §§ 841(a), 846. Hunt appeals his sentence but not his conviction. He alleges that the district court erred under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), by sentencing him for attempted possession with intent to distribute an unspecified amount of cocaine even though he never admitted that he attempted to possess cocaine. We conclude that the district court erred under Apprendi and that the error was not harmless. Accordingly, we reverse and remand for resentencing.[1]
I. Background
Acting on a tip, police intercepted a suspicious Federal Express package at the airport in Anchorage, Alaska, on January 26, 2004. The police brought in a drug-sniffing dog that alerted to the package. After obtaining a search warrant, the police opened the package and discovered it contained approximately one kilogram of cocaine hidden in candles. The police removed most of the cocaine and resealed the package with a nominal amount of the drug inside.
*909 A few days later, an undercover officer delivered the package to an apartment in Anchorage. A woman signed for the package, and police investigators conducting surveillance watched her put it in the trunk of a car. Sometime later, the investigators observed Stacy Hunt take the package from the car and carry it towards the apartment. Shortly thereafter, Hunt left in a white Ford Explorer driven by another man.
While several officers followed the Ford Explorer, others searched the apartment and spoke to the woman who signed for the package. She told police that she had agreed to receive the package for a man named “Sterling,” who paid her approximately $400 for accepting delivery of three separate packages. She claimed she did not know what was inside the package.
The officers tailing the Explorer conducted a traffic stop and saw the Federal Express package inside the vehicle. They arrested the driver and Hunt, who carried Oregon identification with the name “Mario McCoy.” The police interrogated the driver, who told them that he had driven Hunt, whom he knew as “Buddy Walker,” to pick up a package on two occasions. He also told them that Hunt had given him five or six thousand dollars to deposit into a checking account in order to obtain a cashier’s check.
With Hunt’s counsel present, the police interviewed Hunt as well. Still using the name Mario McCoy, Hunt signed a written statement detailing the drug transaction. Hunt wrote that he had ordered drugs from a person in California. He wrote that the person who received the package was supposed to be paid $400 and that a “package of 1 kilo of coke was to be put in a burgundy Mercedes S.U.V.” parked outside a restaurant. Immediately below Hunt’s statement, his lawyer wrote that Hunt would cooperate with the government if the government allowed the case to proceed in state court, rather than federal court. Hunt was released. His lawyer, however, lost contact with him.
On February 17, 2004, a federal grand jury indicted Hunt, alleging that he “did knowingly and intentionally attempt to possess with intent to distribute a controlled substance, to wit: 500 grams or more of a mixture and substance containing cocaine” in violation of 21 U.S.C. §§ 846, 841(b)(1)(A). On December 13, 2007, Hunt was arrested in California, and officers learned that he was the subject of a federal arrest warrant. Hunt was taken to Alaska to face the federal drug distribution charges.
Hunt ultimately decided to plead guilty without a plea agreement. At the change of plea hearing, there were several references to Hunt’s attempt to possess cocaine. First, in response to the court’s inquiry regarding the elements of the offense, the Assistant United States Attorney (AUSA) stated that the government would need to prove at trial that Hunt “attempted to possess a parcel that contained a little over a kilogram of cocaine ... and that he did so knowingly.” Hunt stated that he understood those elements. After a few moments passed, the AUSA stated that he forgot to include the element that “Mr. Hunt attempted to possess that cocaine with the intent to distribute it thereafter.” Hunt responded that he understood that additional element.
The court then restated the elements of the offense as follows: “So you attempted to possess cocaine, you knew it was cocaine or some illegal drug, and you did it with the intent to distribute. I guess those are the three elements, okay?” (emphasis added). Hunt replied, “To those elements, yes, I agree.” Hunt then asked that the government state the elements one last time. The AUSA responded that the government would have to prove that “Mr. *910 Hunt attempted to possess a parcel which contained a little over a kilogram of cocaine [and] ... [w]e’d have to prove that Mr. Hunt’s attempt to possess that cocaine was done knowingly and then we’d have to prove that he intended to distribute that cocaine after coming into possession of it.” Hunt replied, “Yes I understand those elements. As far as the specific amount, I don’t have personal knowledge of it ... as I never opened the package and weighed it, but I do accept responsibility for whatever it was.”
After the government stated the facts it expected to prove if the case were to proceed to trial — including that Hunt was found in possession of a package of over 500 grams of cocaine and later admitted that he had ordered the drugs in a written statement — Hunt said, “For the most part, the facts are true. I admit all the elements of 841(a)(1), and also as I said, I did not receive the package and open it, so I have no specific knowledge of what it contained other than it did contain a controlled substance, that I do know, and I did attempt to possess that controlled substance.” Hunt also confirmed that he had intended to sell or give away the controlled substance. The court then asked the government, “That sounds sufficient, doesn’t it, counsel?” The AUSA agreed that Hunt’s admission was sufficient to supply a factual basis for the offense, and the court accepted Hunt’s plea.
Hunt’s sentencing hearing stretched out over a number of months because of several controversies. First, Hunt argued that he should not be sentenced under 21 U.S.C. § 841(b)(1)(A), the penalty provision for possession with intent to distribute more than 500 grams of cocaine, because he did not admit to a specific amount of drugs during the change of plea hearing. After both parties filed several competing motions on the issue, the court decided, “in an abundance of caution, giving defendant every benefit of the doubt,” that it would accept Hunt’s argument and sentence him as if he had attempted to possess an unspecified amount of cocaine under 21 U.S.C. § 841(b)(1)(C).
In the sentencing memoranda contesting the applicability of section 841(b)(1)(A), Hunt never raised the issue of whether he had admitted at the plea colloquy that he attempted to possess cocaine. When the court heard oral argument on Hunt’s objections to the presentence report at the initial sentencing hearing, however, Hunt expressly denied that he had admitted to attempting to possess cocaine when he and the court engaged in the following exchange:
HUNT: Also, when I made my objections, which has been overlooked, I also objected on the grounds that I did not at plea colloquy admit to a specific type of controlled substance, and I only agreed that I attempted to possess a controlled substance.
THE COURT: Right.
HUNT: Not crack, cocaine, or marijuana, or anything like that. I only agree to a Schedule II — not even a Schedule II. I only agree to a controlled substance. So are you also making a finding for the type of drug also?
THE COURT: Yes, okay.
HUNT: So I’d like to make sure that my (indiscernible) objection is in for not just quantity but also as to type of drugs. And my position is that I should fall back to marijuana for no remuneration, with a statutory max of five years, up — under (b)(1)(D).
THE COURT: Very well. Boy, you’re smart. You’ve made your record, but I — you haven’t changed my mind.
HUNT: Okay, that’s fine.
*911 At a subsequent sentencing hearing, the government called Detective Elizer Feliciano of the Anchorage Police Department. Detective Feliciano was present when Hunt signed the statement in which he admitted to ordering and receiving drugs from California. Through the detective’s testimony, the government introduced a Drug Enforcement Agency laboratory report showing that the substance in the Federal Express package was 1,102 grams of a mixture containing cocaine. Further analysis showed that the mixture was 72 percent pure cocaine.
The detective testified that, in his training and experience, a person receiving a large quantity of cocaine, such as a kilogram, would specify the amount he wished to purchase and would agree on a price with the seller. He estimated that the cocaine Hunt received was worth approximately $25,000.
On cross-examination, Detective Feliciano testified that the type and amount of drugs contained in the Federal Express package were known to the police before Hunt gave his statement, and that the police likely communicated this information to Hunt’s attorney before the interview took place. He also confirmed that the interview occurred after Hunt and the government had entered into a cooperation agreement contingent upon Hunt’s ability to provide reliable information.
On the basis of Detective Feliciano’s testimony, the court found that Hunt was responsible for more than 500 grams of cocaine for the purpose of calculating Hunt’s applicable advisory sentencing guidelines range. Pursuant to the United States Sentencing Guidelines § 2Dl.l(c)(7), the court determined that Hunt’s base offense level was 26. To this level, the court applied a two point enhancement for obstruction of justice as a result of Hunt absconding after his arrest, see id. at § 3C1.1, and a two point reduction for acceptance of responsibility, see id. at § 3El.l(a), resulting in a final offense level of 26.
Next, the parties agreed that Hunt’s criminal history score was a Category IV. Based on Hunt’s lengthy criminal history, the court departed upward to a criminal history score of VI, which yielded an advisory guidelines range of 120 to 150 months. After considering the 18 U.S.C. § 3553(a) sentencing factors, the court determined that a further upward variance was warranted. The court ultimately sentenced Hunt to 180 months, or 15 years, in prison.
II. Standard of Review
We review de novo a claim that a sentence violates a defendant’s constitutional rights. United States v. Raygosa-Esparza, 566 F.3d 852, 854 (9th Cir.2009). Apprendi errors are reviewed under the harmless error standard applied in Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). See United States v. Zepeda-Martinez, 470 F.3d 909, 913 (9th Cir.2006) (holding that error under Apprendi is harmless if the court finds beyond a reasonable doubt that the result would have been the same absent the error).
III. Discussion
A. Apprendi Error
“Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” Apprendi 530 U.S. at 490, 120 S.Ct. 2348. In United States v. Buckland, we explained that “[w]e honor the intent of Congress and the requirements of due process by treating drug quantity and type, which fix the maximum sentence for a conviction, as we would any other material fact in a *912 criminal prosecution: it must be charged in the indictment, submitted to the jury, subject to the rules of evidence, and proved beyond a reasonable doubt.” 289 F.3d 558, 568 (9th Cir.2002) (en bane) (emphasis added); see also United States v. Thomas, 355 F.3d 1191, 1195 (9th Cir.2004) (“[D]rug type and quantity ... are material facts that must be submitted to the jury and proved beyond a reasonable doubt.”).
When a conviction is obtained through a guilty plea rather than a jury verdict, “[t]he government has the burden ‘at the plea colloquy to seek an explicit admission of any unlawful conduct it seeks to attribute to the defendant.’ ” Thomas, 355 F.3d at 1199 (quoting United States v. Cazares, 121 F.3d 1241, 1248 (9th Cir.1997)). A guilty plea constitutes an admission to the formal elements of an offense. See Cazares, 121 F.3d at 1246 (citing McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)). We have held, however, that drug quantity and type are not formal elements of the offenses set out in 21 U.S.C. § 841. Thomas, 355 F.3d. at 1195. Therefore, even though due process requires that drug type be charged in the indictment and proved beyond a reasonable doubt, a defendant can plead guilty to 21 U.S.C. § 841(a)[2] without admitting the type of drug. See id. at 1198.
Here, Hunt purportedly pled guilty to attempted possession with the intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a) and 846. The elements of the offense are (1) that the defendant intended to possess a controlled substance with the intent to distribute it to another person, and (2) that the defendant did something that was a substantial step toward committing the crime. See Ninth Cir. Model Jury Instr. 9.17. Hunt expressly admitted that he intended to possess a controlled substance and that he intended to distribute the controlled substance, and he does not appeal his conviction for this generic offense.
In light of the colloquy at the change of plea hearing, however, we conclude that Hunt did not admit that he intended to possess an unspecified amount of cocaine under section 841(b)(1)(C). We note first that Hunt was informed of incorrect and inconsistent statements of the elements of the offense and the heightened sentencing provisions for drug type. The government erroneously stated twice that it was required to prove beyond a reasonable doubt that Hunt “knowingly” attempted to possess cocaine. While knowing possession is an element of the completed offense of possession with intent to distribute, Ninth Cir. Model Jury Instr. 9.15; see, e.g., United States v. Orduno-Aguilera, 183 F.3d 1138, 1140 (9th Cir.1999), attempted possession requires proof of intent, not knowledge. The district court correctly informed Hunt that the government needed to prove that he intended to possess cocaine, but incorrectly stated that the government could meet its burden by proving that Hunt intended to possess cocaine “or some other controlled substance.”
Nowhere in the record did either the government or the court inform Hunt that a conviction for attempted possession with intent to distribute cocaine under section *913 841(b) requires proof beyond a reasonable doubt that the defendant intended to possess cocaine. Quick reference to the Ninth Circuit’s model jury instructions would likely have avoided this error. Jury Instruction 9.17 plainly emphasizes drug type in the first element of the offense when it states that the government must prove that “the defendant intended to possess [specify controlled substance ] ...” (emphasis in original). At Hunt’s change of plea hearing, however, neither the government nor the court ever unequivocally informed Hunt that the government would be required to prove that Hunt intended to possess cocaine in addition to the other elements of the offense.
Notably, after the government summarized the facts that it intended to prove if the case were to proceed to trial, Hunt expressly denied knowledge of the contents of the package and stated that he did not know what it contained because he never opened it and looked inside. Hunt informed the court that he admitted only the elements of 21 U.S.C. § 841(a), which conspicuously does not specify the type (or amount) of controlled substance. In short, at no time during the plea colloquy did Hunt expressly admit to facts that would establish that the drug he attempted to possess was cocaine.
Because Hunt did not admit that he attempted to possess cocaine, and because the government did not prove that fact to a jury beyond a reasonable doubt, that fact could not be used to support an increase in the maximum statutory sentence Hunt faced. Section 841(b) contains numerous penalty provisions that correspond to various types and amounts of drugs. The penalties range from a maximum of one year in prison to a maximum of life in prison. See, e.g., 18 U.S.C. § 841(b)(3) (maximum of one year for schedule V substance); § 841(b)(1)(D) (maximum of five years for less than 50 kilograms of marijuana); § 841(b)(1)(B) (maximum of 40 years for more than 500 grams of cocaine or a maximum of life in prison where death or serious injury results from the use of the drug). The district court sentenced Hunt under section 841(b)(1)(C) for possession with intent to distribute an unspecified amount of cocaine, exposing Hunt to a maximum sentence of 20 years in prison. The district court erred under Apprendi in sentencing Hunt under section 841(b)(1)(C) because his maximum penalty increased from one year to 20 years in prison based on a fact — Hunt’s possession of cocaine— that Hunt never admitted and that the government never proved beyond a reasonable doubt to a jury.
B. Harmless Error
Our finding of constitutional error does not end our inquiry, however, because we must review Apprendi errors for harmlessness. See United States v. Zepeda-Martinez, 470 F.3d 909, 913 (9th Cir.2006). In assessing harmlessness, we review the entire record to assist us in determining what evidence the parties would have presented had the drug-type issue been fully litigated at a jury trial. Id. at 913 n.3. The record is therefore a guide to determining what the evidence would have established if the case had proceeded to trial; it is not a substitute for a trial, and there need only be evidence sufficient to support a contrary finding to show that the error was not harmless. See Neder, 527 U.S. at 19, 119 S.Ct. 1827. Thus, an Apprendi error is harmless only “where the record contains ‘overwhelming’ and ‘uncontroverted’ evidence supporting an element of the crime.” Id. (quoting Neder, 527 U.S. at 17-18, 119 S.Ct. 1827). An Apprendi error is not harmless if “ ‘the defendant contested the omitted element and raised evidence sufficient to support a contrary finding.’ ” Id. (quoting Neder, 527 U.S. at 19, 119 S.Ct. 1827).
*914 Here, in arguing that the Apprendi error was harmless, the government relies principally on our decision in United States v. Zepeda-Martinez, 470 F.3d 909 (9th Cir.2006). In Zepeda-Martinez, we held that an Apprendi error was harmless upon reviewing the sentence of a defendant who was convicted of being a removed alien found in the United States in violation of 8 U.S.C. § 1326. Id. at 912-13. In that case, Zepeda-Martinez was subjected to an enhanced sentence because at sentencing the court found that he had been removed from the United States after having committed a crime of violence. Id. at 911. The court based its finding on a California record of conviction dated May 21, 2002, and a warrant of removal showing that Zepeda-Martinez was ordered removed on June 8, 2004. Id. at 912. We concluded that the district court erred under Apprendi by basing the sentence in part on the date of the prior removal, a fact which was never admitted by Zepeda-Martinez during his guilty plea nor proven to a jury beyond a reasonable doubt. Id. at 912-13.
We held that the Apprendi error was harmless, however, because the record at sentencing contained overwhelming evidence of the date of the prior removal. Id. at 913. The government introduced the warrant of removal, an official government document which bore Zepeda-Martinez’s name, signature and fingerprint as well as the name, title and signature of the immigration officer who witnessed the removal. Id. Significantly, Zepeda-Martinez did not contest the presentence report’s allegation that he had been removed in 2004 nor the authenticity of the warrant of removal. Id.; see also United States v. Hollis, 490 F.3d 1149, 1157 (9th Cir.2007) (holding that Apprendi error was harmless where several witnesses testified at trial without contradiction that defendant had possessed and sold crack cocaine and defendant did not contest the evidence of drug type at trial, in his objections to the presentence report, or at sentencing). We were thus “satisfied beyond a reasonable doubt that ... the result ‘would have been the same absent the [Apprendi ] error.’ ” Zepeda-Martinez, 470 F.3d at 913 (quoting Neder, 527 U.S. at 19, 119 S.Ct. 1827).
Hunt’s case contrasts sharply with Zepedar-Martinez. Here, the record does not contain overwhelming evidence that Hunt attempted to possess cocaine. First, the contested fact in this case is Hunt’s intent, a fact that is not subject to easy proof like the date of prior removal in Zepeda-Martinez, a fact which was proved through uncontroverted documentary evidence. Here, the government presented no evidence that Hunt looked inside the package to verify its contents, and neither the circumstantial evidence surrounding the offense nor Detective Feliciano’s opinions convince us beyond a reasonable doubt that a jury would have found Hunt intended to receive cocaine.[3] See Neder, 527 U.S. at 18, 119 S.Ct. 1827 (“Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?”).
The government’s strongest evidence is undoubtedly Hunt’s post-arrest signed statement where he wrote “package of 1 *915 kilo of coke was to be put in burgundy Mercedes S.U.V.” At the evidentiary hearing, however, Hunt presented non-frivolous arguments contesting the reliability of the statement. After Detective Feliciano conceded that information regarding the drug delivery was likely passed on to Hunt’s attorney in preparation for Hunt’s interview with the police, Hunt argued that he only learned of the contents of the package through his lawyer. Hunt also stated that he signed the statement only in exchange for a cooperation agreement with the government and that the signed statement reflected an affirmation of what the police wanted to hear, not his personal knowledge. On this record, we conclude that the evidence is not so overwhelming that a jury would necessarily find beyond a reasonable doubt that Hunt intended to possess cocaine.
We also conclude that the constitutional error in this case was not harmless because Hunt, unlike the defendant in Zepedar-Martinez, expressly contested the facts at issue and pointed to “evidence sufficient to support a contrary finding” Neder, 527 U.S. at 19, 119 S.Ct. 1827. Although the Supreme Court in Neder did not expressly define what quantum of evidence is “sufficient to support a contrary finding,” in light of the available record evidence, Hunt’s denial of his intent in this case meets that standard. Here, as noted above, Hunt denied knowledge of the type of drug in the package twice — once at the change of plea hearing and a second time at a sentencing hearing. He also contested the reliability of the signed statement and the opinions of Detective Feliciano. If Hunt were to testify at trial consistent with these facts, his testimony, if credited, would raise a reasonable doubt as to his intent. We cannot conclude beyond a reasonable doubt that a rational jury would not find Hunt credible, especially where Hunt has never had the opportunity to testify.
Moreover, Hunt had no reason to continue litigating the drug-type issue during the course of the several sentencing hearings because the court had ruled at the initial sentencing hearing that Hunt had admitted to attempting to possess cocaine at the change of plea hearing. We faced a similar situation in United States v. Jordan, where a defendant was sentenced based on a court’s finding of drug quantity that was neither alleged in the indictment nor submitted to the jury. 291 F.3d 1091 (9th Cir.2002). In concluding that there was error under Apprendi that was not harmless, we said:
because Jordan had no notice from the indictment that quantity would be an issue at trial, we would need to determine whether Jordan might have contested quantity and what evidence Jordan might have presented. Finally, to affirm the sentence, we would need to be able to say beyond any reasonable doubt that a jury, considering the actual evidence at trial and perhaps other evidence that was never presented, would have convicted Jordan of the higher-quantity offense.
Here ... there are too many unknowns to be able to say with any confidence, let alone beyond reasonable doubt, that the error was harmless. What evidence might have been proffered by Jordan, in a defensive effort to minimize quantity, if the indictment had properly charged the quantity involved in the offense, is entirely speculative.
Id. at 1096-97. Similarly, the plea and sentencing proceedings in this case provide an inadequate record because Hunt’s intent regarding drug type was never litigated. Harmless error review of Apprendi errors requires us to “ ‘determine] what evidence [the parties] would have introduced at trial’ had the issue been properly *916 presented.” Zepeda-Martinez, 470 F.3d at 914 n.3 (quoting United States v. Nordby, 225 F.3d 1053, 1061 n.6 (9th Cir.2000), overruled on other grounds by Buckland, 289 F.3d at 568). On the record before us, it is speculative at best to predict what evidence the parties would have presented at trial relevant to Hunt’s intent to possess cocaine.
If Hunt’s case had proceeded to trial, he could have raised Sixth Amendment or evidentiary objections, he could have presented expert testimony to counter the opinions of Detective Feliciano, he could have cross-examined the various civilian and government witnesses called by the government, and he could have decided to testify to tell his side of the story. Most importantly, a jury would have evaluated and weighed the conflicting evidence. In contrast, we have before us on appeal a presentence report, a few documents admitted at the sentencing hearing, and a cold transcript of one detective’s testimony. Given the limited record in this case, we decline to speculate on how a hypothetical trial may have unfolded because “we cannot reasonably conclude that these issues can be answered fairly based on reason and the record presented.” Jordan, 291 F.3d at 1096.
Accordingly, because Hunt contested the fact that the drug he intended to possess was cocaine and because the record evidence is far from overwhelming, we conclude that the Apprendi error in this case was not harmless.
IV. Conclusion
Due to the Apprendi error, we are required to vacate Hunt’s sentence and remand for resentencing. We recognize that our ruling will result in a substantial reduction in Hunt’s sentence. On remand, the district court must resentence Hunt within the statutory range applicable given the facts that were admitted at the original change of plea hearing. See Thomas, 355 F.3d at 1201-02. Without an admission to the type of drug involved in the offense or a waiver of his rights under Buckland and Apprendi, Hunt faces a maximum of one year in prison under 21 U.S.C. § 841(b)(3), the least severe maximum sentence under section 841(b). See Thomas, 355 F.3d at 1201-02; compare 21 U.S.C. § 841(b)(l)(C)(unspecified amount of schedule I or II substance), with 21 U.S.C. § 841(b)(3) (schedule V substance).
The dissent complains that this result is unjust because it allows a criminal to “escape a richly deserved sentence based on an irrelevant technicality.” The requirement that the government prove facts supporting a greater sentence beyond a reasonable doubt, or that the defendant admit such facts, however, is not an irrelevant technicality. The Supreme Court has explained that this requirement involves “constitutional protections of surpassing importance.” Apprendi, 530 U.S. at 476, 120 S.Ct. 2348; see also In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (“It is ... important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty.”). A sentence cannot be “richly deserved” under our Constitution if the facts supporting the sentence have not been proven as constitutionally required.
The result we announce could easily have been avoided had the district court or the prosecutor been more precise during the plea colloquy in obtaining Hunt’s explicit admission to the type of drug he intended to possess and distribute. This is not an arduous task, and when a defendant equivocates or refuses to admit an essential fact supporting a sentence, the district court can reject the defendant’s plea and *917 proceed to trial. Avoiding what the dissent calls a “windfall” sentence reduction due to an Apprendi error is achieved through a court’s faithful compliance with constitutional requirements, not through appellate review. We are aware that Hunt has a less than stellar criminal record, but we reject the dissent’s implicit suggestion that Hunt’s criminal record should somehow influence our harmless error analysis. Our responsibility is to see that constitutional requirements are met. When they are not and the constitutional error is not harmless beyond a reasonable doubt, a sentence cannot stand.
VACATED and REMANDED for re-sentencing consistent with this opinion.

. Hunt also argues that the district court violated Federal Rule of Criminal Procedure 32, that the court committed procedural error in its fact-finding, and that his sentence was substantively unreasonable. Because we vacate the sentence and remand for resentencing due to the Apprendi error, we do not address Hunt's other arguments.

. 21 U.S.C. § 841(a) reads:
(a) Unlawful acts
Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

. We do not hold, as the dissent suggests, that circumstantial evidence is not sufficient to prove intent. We conclude only that the circumstantial evidence on the record in this case is insufficient for the government to meet its burden upon harmless error review, even when coupled with Detective Feliciano’s opinions on the drug trade and Hunt's signed statement. This reflects our assessment of the weight of the evidence, not a criticism of the inherent quality of circumstantial evidence. Although we recognize that the government’s evidence could convince a jury of Hunt’s guilt, we are not convinced beyond a reasonable doubt that a jury would do so. See Neder, 527 U.S. at 18, 119 S.Ct. 1827.