**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

DOUGLAS VANCE CROOKED ARM,
*Defendant-Appellant.*

No. 15-30277

D.C. No.
CR-13-18-BLG-DWM-01

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

KENNETH G. SHANE,
*Defendant-Appellant.*

No. 15-30280

D.C. No.
CR-13-18-BLG-DWM-02

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted October 6, 2016
Portland, Oregon

Filed April 11, 2017

Before: Diarmuid F. O'Scannlain, Richard R. Clifton, and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge O'Scannlain;
Dissent by Judge Nguyen

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court which, on remand, reimposed felony sentences for the defendants' convictions for conspiracy "to kill, transport, offer for sale, and sell migratory birds, including bald and golden eagles" in violation of the Migratory Bird Treaty Act.

In an argument they cast as an *Apprendi* claim, the defendants, who challenged their sentences in this appeal, contended that they admitted during the plea colloquy only to misdemeanor conduct and cannot be sentenced as felons. The panel wrote that the core of the defendants' claim appears to be a challenge to their felony convictions, and held that the law of the case precludes this court from reconsidering the defendants' arguments, as this court has already resolved any challenge to their felony convictions in *United States v. Vance Crooked Arm*, 788 F.3d 1065 (9th Cir. 2015).

Dissenting, Judge Nguyen wrote that the defendants' felony sentences violated *Apprendi*, and that because the prior

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

panel did not decide whether the defendants' felony sentences were *Apprendi* error, the law of the case doctrine does not preclude the panel from deciding that issue here.

## COUNSEL

Brian M. Murphy (argued), Holland & Hart LLP, Billings, Montana; Mark D. Parker, Parker Heitz & Cosgrove PLLC, Billings, Montana; for Defendant-Appellant Douglas Vance Crooked Arm.

Sherry Scheel Matteucci, Matteucci Law Firm PLLC, Billings, Montana; for Defendant-Appellant Kenneth G. Shane.

Jeffrey S. Beelaert (argued), Allen Brabender, and Andrew C. Mergen, Attorneys; John C. Cruden, Assistant Attorney General; Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.; Mark S. Smith and Leif M. Johnson, Assistant United States Attorneys; Michael W. Cotter, United States Attorney; United States Attorney's Office, Billings, Montana; for Plaintiff-Appellee.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We are asked to review sentences imposed for violations of the Migratory Bird Treaty Act.

I

Douglas Vance Crooked Arm and Kenneth G. Shane appeal their felony sentences for conspiring "to kill, transport, offer for sale, and sell migratory birds, including bald and golden eagles" in violation of the Migratory Bird Treaty Act ("MBTA"), 16 U.S.C. §§ 703(a), 707(b), and 18 U.S.C. § 371. Crooked Arm and Shane were the subjects of a sting operation conducted by United States Fish & Wildlife Service agents as part of "Operation Hanging Rock," an investigation into the illegal sale of migratory bird feathers. Over the course of seven months, undercover agents posed as buyers seeking to purchase fans made from migratory bird feathers from Crooked Arm and Shane before executing search warrants against them. *United States v. Vance Crooked Arm* (*Crooked Arm I*), 788 F.3d 1065, 1068–69 (9th Cir. 2015).

In February 2013, a grand jury indicted Crooked Arm and Shane on four criminal counts. Count I alleged a conspiracy "to kill, transport, offer for sale, and sell migratory birds, including bald and golden eagles," in violation of 16 U.S.C. §§ 703(a), 707(b), and 18 U.S.C. § 371. It also alleged that Crooked Arm and Shane committed one or more of the following acts in furtherance of the conspiracy:

1. Crooked Arm "placed deer carcasses on the land in order to attract and capture birds of prey, including eagles and hawks."

2. Crooked Arm and Shane "sold a golden eagle feather fan for $1,500."

3. Crooked Arm and Shane "offered to sell a magpie feather fan for $800."

4. Crooked Arm and Shane "offered to sell a bald eagle feather fan, and received a down payment of $500."

5. Crooked Arm "offered to sell a winter hawk tail fan for $500."

6. Crooked Arm "offered to sell a bald eagle tail fan for $1,000."

Count II alleged that Crooked Arm and Shane knowingly sold parts of a golden eagle for $1,500; Count III alleged that Crooked Arm and Shane offered to sell parts of a magpie for $800; and Count IV alleged that Crooked Arm and Shane knowingly offered to sell parts of a bald eagle for $1,000, all in violation of 16 U.S.C. §§ 703, 707(b), and 18 U.S.C. § 2.

Crooked Arm and Shane filed a motion to dismiss the indictment for failure to state a felony claim, contending that their conduct in selling parts of birds was a misdemeanor only. The district court denied this motion, ruling that § 707(b) does not distinguish between the sale of whole birds and bird parts and thus the indictment properly charged felony violations.

Subsequently, the defendants entered conditional plea agreements by which they pled guilty to Count I and Count II, while reserving their right to appeal the district court's denial of their motion to dismiss. At the plea colloquy, the district court satisfied itself that Crooked Arm's and Shane's pleas were knowing and voluntary, and that they understood the nature of the charges against them and the consequences of their pleas. In addition to their general pleas of guilty to Count I and Count II, Crooked Arm and Shane specifically admitted to selling bird feathers, and Crooked Arm also admitted to dropping off a deer carcass in the hills "for the animals and the birds to eat."

After being sentenced to probation, Crooked Arm and Shane appealed the district court's denial of their motion to dismiss. Thus, in *Crooked Arm I*, Crooked Arm and Shane challenged their convictions by arguing that the sale of bird feathers was a misdemeanor under § 707. This court agreed, holding that the MBTA makes a distinction between birds and parts of birds. *Crooked Arm I*, 788 F.3d at 1073–75. We vacated their felony convictions for selling parts of a golden eagle (Count II) but affirmed their felony convictions for conspiracy to violate § 703(a) (Count I), through the killing, transporting, offering for sale, or selling of migratory birds. Recognizing that having one felony conviction instead of two could impact the sentence for Count I, we vacated the sentences for both counts and remanded for resentencing. *Id.* at 1072, 1080. On remand, the district court again imposed felony sentences for their convictions under Count I, sentencing each to one year of probation with credit for time served. Crooked Arm and Shane now contend that they admitted only to misdemeanor conduct and cannot be sentenced as felons, an argument they cast as an *Apprendi* claim.

II

A

While Crooked Arm and Shane challenge their sentences in this appeal, the core of their claim actually appears to be a challenge to their felony convictions— the logical predicate of being sentenced as a felon is conviction of a felony.[1] Yet, this court has already resolved any challenge to their felony convictions in *Crooked Arm I*. We held that Count I properly charged a felony offense, and we affirmed their Count I felony convictions. *Id.* at 1071–72, 1080.

Crooked Arm and Shane point to language in *Crooked Arm I* stating that "Count I clearly charge[d] *in part* a statutory felony," *id.* at 1071–72 (emphasis added), and use this to argue that their convictions were not felonies. Yet, such selective quotation is a misreading of our opinion. At least six other times in *Crooked Arm I*, we stated that Count I charged a felony without including the qualifying language of "in part."[2] And, in context, we explained:

---

[1] Although Crooked Arm and Shane claim that they are not challenging their convictions, this is the essence of their dispute. Contrary to the dissent's suggestion, it would be absurd to affirm Crooked Arm's and Shane's *felony* convictions but find their *felony* sentences improper on the basis that the relevant crimes were only misdemeanors. If one is convicted of first-degree murder, it would be bizarre to claim that he can be sentenced only for manslaughter. Notably, Crooked Arm and Shane do not claim that the district court improperly calculated their Guidelines' range or bring similar sentencing claims.

[2] *See id.* at 1068 ("We conclude . . . that . . . Count I . . . charges a felony"), 1071 ("[T]his [C]ount [I] plainly charged a felony"), 1072 ("The substantive MBTA offense . . . makes Count I a felony charge") ("Count

> [E]ven if Defendants were right that sale of
> eagle feathers is only a misdemeanor, Count
> I clearly charge[d] in part a statutory felony
> . . . because [it] charge[d] a conspiracy to
> "kill, transport, offer for sale, and sell
> migratory birds, including bald and golden
> eagles," conduct that falls within the MBTA's
> felony provisions. And the overt acts alleged
> included placing deer carcasses to attract birds
> of prey.

*Id.* at 1071–72. Thus, "in part" makes it clear that *even if* the sale of feathers might not amount to a felony, "placing deer carcasses to attract birds of prey" did support felony convictions.[3] *Id.* And we upheld these convictions in our disposition. *Id.* at 1080.

## B

Crooked Arm and Shane now contend that they admitted only to selling bird feathers during the plea colloquy, and by implication they did not admit to "placing deer carcasses to attract birds of prey," the overt act supporting felony charges upon which *Crooked Arm I* relied. *Id.* at 1072. Thus, they argue that they only pled guilty to conduct that constituted a misdemeanor. Yet, to the extent that Crooked Arm and Shane

---

I . . . charged a felony offense"), 1073 ("Count I charged a felony"), 1080 ("Count I charged a felony").

[3] Contrary to the dissent, it is not undisputed that Crooked Arm and Shane admitted only to misdemeanor conduct. At the plea hearing, when the district court asked Crooked Arm why he was guilty, Crooked Arm explained that he "had a deer carcass in the back of [his] truck," which he took "out in the hills and dropped . . . off for the animals and birds to eat."

are challenging the adequacy of their pleas to support felony convictions (and thus felony sentences), this is also foreclosed by *Crooked Arm I*.

Indeed, Crooked Arm and Shane presented the very same arguments in supplemental briefing in *Crooked Arm I*. They specifically contended that Count I charged both felony and misdemeanor violations and that based on their pleas, their convictions were for misdemeanors only. And they raised the *Apprendi* point that they make now.

Nonetheless, we held that "the record before us d[id] not permit a conclusion that Defendants' pleas were not knowing and voluntary without adequate factual basis." *Id.* at 1072 n.5. Alternatively, we explained that Crooked Arm and Shane "waived" any challenge to the adequacy of their pleas by not raising this claim before the district court or in their opening brief before our court. *Id.* Thus, we upheld their felony convictions. *Id.* at 1080.

C

Under law of the case, we are precluded from reconsidering these issues. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). Thus, we will not reevaluate Crooked Arm and Shane's claims that the government needed to obtain a specific admission from them during the plea colloquy in order for them to be convicted (and sentenced) as felons. Defendants cannot relitigate the adequacy of their pleas by resurrecting them in the guise of a sentencing claim.

The dissent argues that law of the case does not apply, citing our decision in *United States v. Caterino*, 29 F.3d 1390,

1395–96 (9th Cir. 1994) *overruled on other grounds by Witte v. United States*, 515 U.S. 389 (1995). *Caterino*, however, involved a situation where we held that a defendant was free to raise an argument on remand for resentencing which we had found waived in the initial appeal. *Id.*

Unlike *Caterino*, the problem here is not that the district court merely failed to address the argument before the first appeal, but that our decision on the merits of the plea agreement forecloses further review. If *Crooked Arm I* had merely held that Crooked Arm and Shane had waived their ability to challenge the adequacy of the pleas, *Caterino* might be on point. But we also rejected Crooked Arm and Shane's arguments on their face. *See Crooked Arm I*, 788 F.3d at 1072 n.5. It would be improper to reexamine them now.

Further, in *Caterino* there was no challenge to the underlying conviction. Instead, the question was a pure sentencing claim—whether the defendant's consecutive sentences violated the Double Jeopardy clause. *See* 29 F.3d at 1396. The dissent is correct that "[o]n remand, the district court generally should be free to consider any matters relevant to sentencing, even those that may not have been raised at the first sentencing hearing, as if it were sentencing de novo." *United States v. Matthews*, 278 F.3d 880, 885–86 (9th Cir. 2002) (citing *United States v. Ponce*, 51 F.3d 820, 826 (9th Cir. 1995)). But Crooked Arm and Shane's claims about the adequacy of the pleas supporting their felony convictions are not sentencing issues.

## D

Indeed, because we affirmed Crooked Arm's and Shane's felony convictions and vacated only their sentences, the

district court was precluded from evaluating the adequacy of their pleas or their convictions. Such analysis fell outside the scope of the remand. *See Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172–73 (9th Cir. 2006) (collecting cases).

E

Finally, even if one accepts Crooked Arm and Shane's contention that they did not realize that they were pleading guilty to felony conduct (apart from the sale of feathers), after this court upheld their felony convictions in *Crooked Arm I*, the district court offered them a chance to withdraw their guilty pleas on remand. Regardless of whether the district court had the authority to do so, if Crooked Arm and Shane did not want to be sentenced as felons, they should have tried to withdraw their pleas. *Cf. United States v. Broce*, 488 U.S. 563, 571 (1989). In the wake of *Crooked Arm I*, to claim that they did not understand that they were pleading guilty to a felony (or would be sentenced as felons) is simply unbelievable.

III

In sum, because *Crooked Arm I* disposes of their arguments, Crooked Arm's and Shane's challenges to their felony sentences fail. We express no opinion whatsoever on the merits of their *Apprendi* claim.

**AFFIRMED.**

NGUYEN, Circuit Judge, dissenting:

Crooked Arm's and Shane's felony sentences violate *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the conspiracy object to which they admitted—selling migratory bird feathers—was only a misdemeanor. Yet the majority refuses to reach the merits of Defendants' sentencing argument because a prior panel purportedly "affirmed their felony convictions." Majority Op. at 6. The majority's flawed reasoning is as follows: the prior panel, by not vacating the *convictions*, implicitly ruled that Defendants should be *sentenced* as felons on remand. But the panel made no such ruling, which would have required a finding that Defendants admitted to one of the felony objects—rather than the misdemeanor objects—alleged in Count I's multi-object conspiracy. Instead, the panel held that Count I charged a felony *in part*, that Defendants admitted only to a conspiracy to sell feathers, that the sale of feathers was a misdemeanor, and that Defendants' felony sentences must be vacated. *United States v. Vance Crooked Arm* (*Crooked Arm I*), 788 F.3d 1065, 1070 n.2, 1071–72, 1079 (9th Cir. 2015) (per curiam).

Because Defendants' sentences violate *Apprendi*, and because the law of the case does not prevent us from correcting this error (indeed, Supreme Court and our own precedent require us to fix it), I respectfully dissent.

**I**

The majority relies solely on a procedural ground not advanced by the government to deny relief, and it is therefore important at the outset to understand the unusual posture of this case.

The parties do not dispute that, during the plea colloquies, Crooked Arm and Shane admitted only to a misdemeanor object: a conspiracy to "sell parts of birds," namely, migratory bird feathers.[1]  The district court nevertheless initially sentenced them as felons based on the mistaken belief that selling *parts* of birds is a felony.  No one addressed whether a felony sentence could be supported on other grounds because the district court and the parties believed—mistakenly—that the *only* object of the conspiracy alleged in Count I was to "sell the various parts of the birds."[2] While the district court and the parties all understood Count I as alleging only a conspiracy to sell bird parts, they disagreed as to whether doing so was a misdemeanor (as Crooked Arm and Shane argued) or a felony (as the government and the district court believed).

---

[1] The majority confusingly focuses on Crooked Arm's admission to an alleged overt act: placing deer carcasses on the land.  Majority Op. at 8 & n.3.  But, as Crooked Arm and Shane explain, this overt act—which itself is not a felony—does not convert a misdemeanor conspiracy into a felony.  *See Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975). Whether the conspiracy is a misdemeanor or a felony turns not on this overt act, but rather on the "object of the conspiracy" admitted by Defendants, which was the sale of feathers.  *Crooked Arm I*, 788 F.3d at 1070 n.2, 1071; 18 U.S.C. § 371.

[2] At the plea colloquy, the district court told Shane that what the indictment is "saying in Count One is that you conspired with Mr. Crooked Arm . . . to sell the various parts of the birds."  No party disagreed with this characterization.  That is because the government had already conceded, and Defendants agreed, that the "indictment here charges defendant with selling and offering to sell bird parts."  The government and the district court simply took the position that the indictment's use of the statutory term "migratory bird" included "parts of birds."  As *Crooked Arm I* held, that conflation of birds with bird parts was error.  788 F.3d at 1075.

On appeal, the panel in *Crooked Arm I* agreed with Defendants that, unlike the sale of whole birds, the sale of bird parts was only a misdemeanor. 788 F.3d at 1079. The panel nevertheless affirmed the district court's denial of the motion to dismiss because "Count I clearly charges *in part* a statutory felony," namely, a conspiracy to offer for sale and sell birds. *Id.* at 1071–72 (emphasis added).

This holding in *Crooked Arm I* is consistent with the plain language of the statute, which shows that only two of the four alleged objects of the conspiracy in Count I—*offering for sale* and *selling* migratory birds—qualify as felonies. The other two objects—*killing* and *transporting* migratory birds—are misdemeanors.[3] Indeed, the government conceded this point at oral argument, as did the district court below when denying the motion to dismiss. This distinction matters because, if Crooked Arm and Shane admitted only to misdemeanor objects, then the conspiracy to which they pled is itself only a misdemeanor. *See* 18 U.S.C. § 371; *Crooked Arm I*, 788 F.3d at 1071.

In supplemental briefing requested by the panel in *Crooked Arm I*, Defendants advanced several arguments, including that *Apprendi* required them to be sentenced as misdemeanants for Count I because "the object of the conspiracy to which the Defendants pled guilty (selling

---

[3] Under the Migratory Bird Treaty Act, it is a felony to "sell" or "offer for sale . . . any migratory bird." 16 U.S.C. § 707(b)(2). Absent intent to sell, the Act makes it a misdemeanor to "kill" or "transport" a migratory bird. *See id.* §§ 703(a), 707(a). Consistent with *Crooked Arm I*, our sister circuits have also recognized that killing migratory birds is only a "misdemeanor" under 16 U.S.C. § 707(a). *See United States v. Apollo Energies, Inc.*, 611 F.3d 679, 681 (10th Cir. 2010); *United States v. CITGO Petroleum Corp.*, 801 F.3d 477, 488 (5th Cir. 2015).

feathers) is a misdemeanor." Defendants therefore requested that the panel "remand for re-sentencing rather than dismissing" Count I. The panel obliged by vacating their sentences and remanding. *Id.* at 1080.

## II

## A

The linchpin of the majority's opinion is that, under the law of the case doctrine, we must decline to hear Crooked Arm's and Shane's sentencing challenge. I disagree. Because the prior panel "did not decide" whether Crooked Arm's and Shane's felony sentences were *Apprendi* error, the "law of the case doctrine does not preclude us from deciding that issue here." *United States v. Almazan-Becerra*, 537 F.3d 1094, 1097 (9th Cir. 2008) (holding that the law of the case doctrine did not bar consideration on remand of sentencing argument because the prior panel, despite addressing the issue, did not decide it); *see Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1193 (9th Cir. 2000).

Crooked Arm and Shane are not, as the majority characterizes it, improperly attempting to "relitigate the adequacy of their pleas by resurrecting them in the guise of a sentencing claim." Majority Op. at 9. To the contrary, they are not challenging their *convictions* under Count I; they do not argue that their "pleas were not knowing and voluntary and without adequate factual basis," two issues addressed in a footnote in *Crooked Arm I.* 788 F.3d at 1072 n. 5. Instead, Crooked Arm and Shane concede the propriety of their convictions on Count I, but challenge only the *sentences* they received on remand. The majority conflates a challenge to a sentence with a challenge to a conviction—two different legal

theories with different remedies based on different facts—so as to shoehorn this appeal into a theory rejected in *Crooked Arm I*.[4]

Contrary to the majority's suggestion, the panel in *Crooked Arm I* never "rejected" the *Apprendi* argument included in Defendants' supplemental briefing; the panel simply did not discuss the argument or even mention *Apprendi*. Majority Op. at 10. Nor was it required to do so, as it granted Defendants the relief they sought: the panel held that Count I charged a felony only in part, that Defendants admitted only to a conspiracy to sell bird parts, that the sale of bird parts was a misdemeanor, and that Defendants' felony sentences must be vacated. *Crooked Arm I*, 788 F.3d at 1070 n.2, 1071–72, 1079. These holdings—which are law of the case—laid the necessary groundwork for Defendants to receive misdemeanor sentences on remand.

Having vacated the sentences, the panel in *Crooked Arm I* did not reach the issue of whether Defendants were properly sentenced for a felony. The passages cited by the majority describing Count I as *charging* a felony only underscore the limits of *Crooked Arm I*'s holding, namely, that the district court properly denied the motion to dismiss as to Count I. But a determination that Count I *charged* a felony says nothing about whether Defendants were properly *sentenced* as felons because, as the government conceded and the

---

[4] We routinely recognize the distinction between a challenge to a conviction and a challenge to a sentence by affirming convictions but vacating sentences due to *Apprendi* error. *See, e.g.*, *United States v. Locklin*, 530 F.3d 908, 911–13 (9th Cir. 2008). Therefore, contrary to the majority's suggestion, it would not be absurd to affirm Defendants' convictions but also hold that their felony sentences were improper.

district court held, Count I also charged a misdemeanor. Under such circumstances, to determine that a felony sentence was proper under *Apprendi* would have required the panel to hold that Crooked Arm and Shane *admitted* to a felony object. *See United States v. Guerrero-Jasso*, 752 F.3d 1186, 1189–91 (9th Cir. 2014). The panel never did so. Because *Crooked Arm I*'s analysis "neither acknowledged nor discussed" the *Apprendi* argument and, in fact, granted Defendants the relief they requested, the law of the case doctrine does not apply here. *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995).

## B

Even if *Crooked Arm I*'s silence on the issue could be read as a rejection of Defendants' *Apprendi* argument (which it cannot), the law of the case doctrine does not bar relief here because the prior panel "wiped the slate clean" by vacating the original sentences and remanding for resentencing. *Pepper v. United States*, 562 U.S. 476, 507 (2011). This is true even if *Crooked Arm I* vacated their sentences on different grounds than those raised by Defendants on remand. *Id.* at 507–08 (holding that the district court "was not bound by the law of the case doctrine" to rule the same way as in prior sentencing because the court of appeals had vacated the sentence, albeit on different grounds).[5]

---

[5] The two cases relied upon by the majority do not hold otherwise. Those cases do not involve an appeal from a remand for resentencing, nor do they address the binding authorities discussed herein. *See United States v. Alexander*, 106 F.3d 874, 875 (9th Cir. 1997) (holding that the "district court abused its discretion by departing from the law of the case and admitting a previously suppressed confession"); *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1173 (9th Cir. 2006) (holding that the Board of Immigration Appeals was bound by the first appeal's "limited remand" to

"On remand, the district court generally should be free to consider any matters relevant to sentencing, even those that may not have been raised at the first sentencing hearing, as if it were sentencing de novo." *United States v. Matthews*, 278 F.3d 880, 885–86 (9th Cir. 2002) (en banc). The present case underscores the policy reasons behind the rule generally permitting defendants to raise all available sentencing arguments on remand: doing so provides the "predictability and consistency in sentencing" necessary for a "just sentence." *Matthews*, 278 F.3d at 886 (quoting *United States v. Matthews*, 240 F.3d 806, 823 (9th Cir. 2000) (O'Scannlain, J., dissenting)). In the first sentencing hearing, the district court sentenced Crooked Arm and Shane based on the mistaken belief that Count I alleged only a conspiracy to "sell the various parts of the birds" and that doing so was a felony, a legal conclusion that we reversed in *Crooked Arm I*. As the district court noted on remand, "nobody contemplated" that the Ninth Circuit would hold that Count I charged a felony *in part*. Rather, the district court and the parties expected either a total affirmance or total reversal. Thus, in their first sentencing hearing, Crooked Arm and Shane had no reason to challenge an *Apprendi* error that had yet to occur and which depended on a future partial reversal that nobody expected.

The majority's only answer is that Defendants' *Apprendi* argument is not an *Apprendi* argument but rather a challenge to the "adequacy of the pleas," an argument rejected in *Crooked Arm I*. Majority Op. at 10. Respectfully, this reasoning substitutes a strawman argument for the one Defendants actually make. Crooked Arm and Shane clearly

---

consider only "whether [the petitioner] has established a prima facie case of eligibility for asylum").

state that their "pleas were adequate to convict them" on Count I because they admitted a misdemeanor object of the conspiracy: the sale of bird feathers. They simply challenge their sentences because they pled to a misdemeanor conspiracy, but were sentenced as felons—a quintessential *Apprendi* error.

## C

Furthermore, we do not apply the law of the case doctrine when doing so would be "clearly erroneous" and would result in "a manifest injustice." *Pepper*, 562 U.S. at 506–07. Such is the case here. Closing our eyes to a clear *Apprendi* error is a manifest injustice because, unlike a misdemeanant, a felon must "carry through life the disability of a felon[y] and by reason of that fact he might lose certain civil rights," such as the right to vote, serve on a jury, or hold political office. *See Fiswick v. United States*, 329 U.S. 211, 222 & n.10 (1946); *United States v. Chovan*, 735 F.3d 1127, 1145 (9th Cir. 2013) (Bea, J., dissenting) (unlike misdemeanants, "felons can suffer numerous restrictions on their constitutional rights").

## D

Defendants also could not have waived in *Crooked Arm I* a challenge to a sentencing error that had not yet occurred. In *United States v. Caterino*, we affirmed Caterino's convictions in his first appeal and held that he had "waived" his double jeopardy sentencing argument by acquiescing below. 29 F.3d 1390, 1393, 1395 (9th Cir. 1994) *overruled on other grounds by Witte v. United States*, 515 U.S. 389 (1995). However, we identified a different error and remanded for resentencing. *Id.* at 1393. On remand, the district court rejected Caterino's attempt to raise his double

jeopardy argument, finding that the argument was barred by the law of the case doctrine. *Id.* at 1395. We reversed again, holding that the defendant was "free to make any new arguments or concessions he deemed appropriate given the new set of circumstances" of a vacated sentence and remand for resentencing. *Id.* at 1396. We explained that, after an appellate court vacates a sentence and remands for resentencing, a defendant is not "bound at the resentencing phase by his [earlier] waiver." *Id.* at 1396; *see also United States v. Garcia-Guizar*, 234 F.3d 483, 490 (9th Cir. 2000) (rejecting the argument that the government "waived its right to correct [on remand] the error in the original sentencing because it did not cross-appeal from the original sentence").

**E**

The majority faults Crooked Arm and Shane for not withdrawing their pleas on remand, stating that they "should have tried" to do so if they "did not want to be sentenced as felons." Majority Op. at 11. But the district court's offer to withdraw their pleas came with a warning that doing so would erase their victory on appeal, because the government would be permitted to recharge them as felons. A district court cannot immunize itself from *Apprendi* error simply by offering a defendant the Hobson's choice between an unconstitutional sentence and withdrawal of his plea. That dubious proposition appears nowhere in the case cited by the majority, which rejected a collateral attack on a conviction because "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked" absent certain exceptions. *United States v. Broce*, 488 U.S. 563, 574 (1989) (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). That case has nothing to do with the *Apprendi* error that arose here.

## III

While not addressed by the majority, the district court committed *Apprendi* error by sentencing Defendants as felons because the government failed to secure an admission of any felony object of the conspiracy.

Under *Apprendi* and its progeny, a sentencing court may not increase the penalty for a crime beyond the statutory maximum by relying on facts, other than the fact of a prior conviction, "that were neither admitted by the [d]efendant nor found by a jury beyond a reasonable doubt." *Guerrero-Jasso*, 752 F.3d at 1189. Error occurs even if the court sentences a defendant to less than the maximum penalty provided by statute because the term "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely v. Washington*, 542 U.S. 296, 303 (2004).

The government bears the burden "at the plea colloquy to seek an explicit admission of any unlawful conduct it seeks to attribute to the defendant." *United States v. Hunt*, 656 F.3d 906, 912 (9th Cir. 2011) (quoting *United States v. Thomas*, 355 F.3d 1191, 1199 (9th Cir. 2004)). Therefore, in order to obtain felony sentences here, the government must have elicited from Crooked Arm and Shane explicit admissions to a felony object of the conspiracy: offering for sale or selling migratory birds (not merely bird feathers). The government failed to do so. In fact, during his plea colloquy, Shane specifically rejected the government's offer of proof as "wrong and misleading," admitting only to helping Crooked Arm sell his daughter's fan made of migratory bird feathers. Crooked Arm also admitted only to selling feathers and

leaving a deer carcass out for birds to eat. But neither admitted to conspiring to sell or offer for sale migratory birds.

The government falls back on the argument that Crooked Arm and Shane pled guilty to a felony because the indictment alleges a multi-object conspiracy that includes both misdemeanor and felony objects. That is not the law. Where, as here, a defendant pleads guilty to a count alleging conduct in the conjunctive, the defendant admits only the least serious conduct. *See Guerrero-Jasso*, 752 F.3d at 1191 (vacating a sentence based on a guilty plea to a charge alleged in the conjunctive because when "either 'A' or 'B' could support a conviction, a defendant who pleads guilty to a charging document alleging 'A and B' admits only 'A' or 'B'" (quoting *Young v. Holder*, 697 F.3d 976, 988 (9th Cir. 2012) (en banc))). That is because, by pleading guilty to the charging document, a defendant only "admits the facts constituting the elements of the charge," but not allegations that are "not necessary" for a conviction. *United States v. Cazares*, 121 F.3d 1241, 1246–47 (9th Cir. 1997) (vacating sentence based on a guilty plea to an indictment charging a drug conspiracy and alleging that the defendant possessed a gun because gun possession was not an element of the drug conspiracy charge).

Here, all that was necessary for a conviction under Count I was an admission to any *one* of the four alleged objects of the conspiracy, including the misdemeanor objects of *killing* and *transporting* birds. *See Griffin v. United States*, 502 U.S. 46, 56–57 (1991) (affirming a conviction on a multi-object conspiracy charge under 18 U.S.C. § 371 where the evidence implicated the defendant as to only one of the two objects of the conspiracy). Because the government failed to secure an admission from Crooked Arm and Shane of any felony object

of the conspiracy, they pled only to a misdemeanor. As a result, the district court erred in sentencing them as felons. *See Guerrero-Jasso*, 752 F.3d at 1191.

\* \* \*

Because the district court committed *Apprendi* error, I would vacate the sentences and remand with instructions to resentence Crooked Arm and Shane as misdemeanants.